UNITED STATES, Appellee,

v.

Master Sergeant Albert L. WEATH-
ERSBY, Jr., United States
Army, Appellant.

ARMY 9500911.

U.S. Army Court of Criminal Appeals.

26 May 1998.

For Appellant: Captain Dirk Gifford, JA (argued); Lieutenant Colonel Michael L. Walters, JA; Captain Mark I. Goodman, JA (on brief); Major Leslie A. Nepper, JA.

For Appellee: Captain Robert F. Resnick, JA (argued); Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Captain Joanne P. Tetreault, JA (on brief); Captain Elizabeth N. Porras, JA.

Before GORDON, Senior Judge, JOHNSTON and ECKER, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSTON, Judge:

Contrary to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of attempted forcible sodomy, two specifications of rape, and two specifications of assault, in violation of Articles 80, 120, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 920, and 928 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for twenty-six years, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant asserts, inter alia, that both of his trial defense counsel were ineffective because they presented no evidence during the sentencing phase of his court-martial. We conclude that appellant was deprived of the effective assistance of counsel during sentencing, and that the result of this trial was unreliable as to sentence.

### Facts and Background

The appellant culminated his twenty-four-year Army career as the first sergeant of a Ranger training company. He had completed outprocessing and had attended his own retirement ceremony. He was on terminal leave awaiting discharge when the allegations that resulted in his court-martial came to light.

The appellant was being investigated for using excessive force in disciplining his children when an allegation arose concerning sexual abuse of his daughter, M, on numerous occasions. Ultimately, he was charged with numerous specifications concerning assault, attempted sodomy, rape, and adultery. During the trial on the merits, the defense counsel never placed good soldier evidence on the record. They objected when it appeared the prosecution would rebut a good soldier defense.

The critical issues in this case arose during the sentencing phase of the court-martial. At the conclusion of the government case on sentencing, trial defense counsel asked for a thirty-minute recess. When the court-martial resumed, the appellant took the witness stand and testified as follows:

ACC: Sir, I'm absolutely shocked. M you've always been my daughter and you know that. And you know I'll always love you. Girl, God bless you. To my family you all are going to have to be strong. My friends, you know me. That's all I have to say. Tell M that I love her.

The defense rested without offering any documentary evidence or presenting other witnesses. The government had no rebuttal.

The military judge did not question the trial defense counsel and the accused to determine whether this extraordinarily abbreviated defense presentation during sentencing was an intentional tactical decision. Instead, he recalled the victim and questioned her about her testimony. He concluded by asking her:

MJ: [Y]our father would not be convicted and therefore I would not be able to punish him and shouldn't be able to punish him except based upon your sworn testimony. Do you understand that?

M: Yes.

MJ: Did your father do to you what you said that he did?

M: Yes he did.

MJ: Okay. You may resume your seat.[1]

Immediately thereafter, counsel presented their sentencing arguments. Government counsel repeatedly emphasized the egregious nature of the offenses. Counsel urged the military judge to impose a dishonorable discharge, total forfeitures, reduction to E1, and confinement "for at least 50 years." Defense argument, on the other hand, apparently lasted approximately two minutes.[2] Counsel urged the military judge to impose no more than ten years of confinement.

On appeal, the appellant supported his assertion of ineffective assistance of counsel with numerous affidavits from persons who could have been witnesses during the sentencing phase of his court-martial. On 30 January 1997, we reviewed the record and the materials submitted by the appellant and found, in accordance with *United States v. Lewis*, 42 M.J. 1, 6 (1995), sufficient evidence, which if unrebutted, would overcome the presumption of competence of counsel. Consequently, we ordered the production of affidavits from both trial defense counsel to answer the allegations of ineffective assistance raised by the appellant.

### Ineffective Assistance of Counsel

■ In order to prevail on an ineffective assistance of counsel claim, the appellant bears the heavy burden of meeting both prongs of a two-part test: that the performance of his counsel was deficient and that he was prejudiced thereby. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 M.J. 186 (C.M.A.1987).

■ The deficient performance prong of this test requires a showing that counsel's errors were so serious that they were not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. The competence of counsel is presumed. To make out a claim of ineffective assistance of counsel, the accused must rebut the presumption by pointing out specific errors made by his defense counsel which were unreasonable under prevailing professional norms. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. In making the competence determination, we are required to keep in mind the guidance of the Supreme Court: "[C]ounsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. *See also Scott*, 24 M.J. at 188.

■ The prejudice prong of the test for ineffective assistance of counsel requires a showing that the counsel's errors were so serious as to deprive the accused of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. The test is whether "there is a reasonable probability that, but for counsel's unprofessional

---

1. We are satisfied that the questions by the military judge amounted to reconsideration of the findings of guilt.

2. The duration of an argument during sentencing may have no relationship to its effectiveness. We are satisfied that the sentencing argument presented in this case by trial defense counsel, although not a model for emulation, was not deficient performance per se. Our analysis of a deficient performance during sentencing focuses on the failure to present witnesses and documentation that could be referred to during argument.

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694, 104 S.Ct. 2052. We ensure that the result of trial is reliable by "ensuring that the trial process was truly adversarial." *United States v. Holt*, 33 M.J. 400, 409 (C.M.A.1991). This involves advocacy.

The appellant contends, in part, that both of his counsel were deficient in their performance because they did not present any evidence of good military character and failed to present any evidence during the sentencing phase of trial.

 We agree with appellant's assertion that counsel failed to present evidence of his good military character during the defense presentation on the merits. Military practice allows the introduction of good military character evidence by the defense in order to create reasonable doubt about the allegations against an accused. *United States v. Benedict*, 27 M.J. 253 (C.M.A.1988); *United States v. Court*, 24 M.J. 11 (C.M.A.1987); *United States v. Belz*, 20 M.J. 33 (C.M.A. 1985).

The affidavits supplied by counsel in responding to assertions of ineffective assistance, however, indicate that the decision not to use good military character evidence was premised on concerns about rebuttal in the form of information about an adulterous relationship with a subordinate. Portions of those affidavits appear to be based on hindsight rather than on an accurate appraisal of the trial tactics as they existed at the time of the court-martial.[3]

 While the decision not to use good military character evidence may or may not have been wise, we are not prepared to say that counsel's performance departed significantly from the standard expected. Counsel evaluated the good character evidence, at least in part, and decided not to pursue that tactic at trial. That decision was based on a reasoned evaluation of the good or bad results at trial that could flow from using such evidence. We will not second-guess defense counsel's tactical decisions. *United States v. Rivas*, 3 M.J. 282, 289 (C.M.A.1977).[4] Thus, counsel's tactical decision during the findings phase of trial not to use good character evidence did not run afoul of prong one of the ineffective assistance of counsel standard.

Although counsel's performance during the merits of the case was not deficient, their failure to present matters in extenuation and mitigation during the sentencing phase of trial raises concerns about a breakdown in the adversarial process. The American Bar Association (ABA) Standards of Criminal Justice specify the duties of defense counsel during sentencing. Defense counsel should:

take particular care to make certain that the record of the sentencing proceedings will accurately reflect all relevant mitigating circumstances relating either to the offense or to the characteristics of the defendant which were not disclosed during the guilt phase of the case.

3 American Bar Association Standards for Criminal Justice, 18–6.3(f)(ii)(2d ed.1980)[hereinafter ABA Standards]. The standards note the importance of the record for both the trial judge and others.

The attorney should satisfy himself or herself that the factual basis for the sentence

---

**3.** The concern about rebuttal may not have been well-founded. Appellate defense counsel stated during oral argument that the affair began after the appellant had his retirement ceremony and was on terminal leave. He had been separated from his wife for several years at that time. These facts would not support an adultery charge under Article 134, UCMJ. According to counsel, the child was born four months after trial. Appellant's clemency submission pursuant to Rule for Courts–Martial 1105 [hereinafter R.C.M.] indicates that the appellant acknowledged paternity and named the child Albert Jr.

**4.** "Where inaction occurs at a critical point where action is compelled by the situation—where, in other words, defense counsel remains silent where there is no realistic strategic or tactical decision to *make* but to speak up—then the accused has been denied " 'the exercise of the customary skill and knowledge that prevails . . . ' 'within the range of competence demanded of attorneys in criminal cases.' " " *Rivas*, 3 M.J. at 289 (quoting *United States v. Walker*, 21 U.S.C.M.A. 376, 45 C.M.R. 150, 152, 1972 WL 14145 (1972)). *See also McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

will be adequate both for the purposes of the sentencing court and, to the extent ascertainable, for the purposes of subsequent dispositional authorities.

ABA Standard 18–6.3(f)(ii). The ABA Standards are applicable to military trial and defense counsel to the extent they do not conflict with the Manual for Courts–Martial, United States, or the UCMJ. *See* Army Reg. 27–10, Legal Services: Military Justice, para. 5–8c (24 June 1996).

Rule for Courts–Martial 1001 governs presentencing procedure during courts-martial. Rule for Courts–Martial 1001(c)(1)(B) allows the defense to present matter in mitigation. Such matter is introduced in order to lessen the punishment to be adjudged by the court-martial, or to furnish grounds for a recommendation of clemency. Matter in mitigation includes:

> particular acts of good conduct or bravery and evidence of the reputation or record of the accused in the service for efficiency, fidelity, subordination, temperance, courage, or any other trait that is desirable in a servicemember.

R.C.M. 1001(c)(1)(B).

Although the appellant had twenty-four years of service at the time of trial, trial defense counsel failed to present any matter in mitigation to the military judge during the sentencing phase of trial. Based on our review of the record and affidavits supplied by counsel, we conclude that counsel also failed to take adequate steps to identify potential matter in mitigation or to evaluate adequately information that had been brought to their attention. *See United States v. Palenius,* 2 M.J. 86, 90 (C.M.A.1977).

■ Counsel seek to excuse their deficient performance, in part, by placing the burden of effective advocacy on the appellant—i.e., he did not provide them with any documents or tell them of any good witnesses, so they did not call any witnesses or present any matter in mitigation. An accused, however,

may not fully understand the sentencing process and may act contrary to his own interests by being uncooperative and close-mouthed. Counsel do not satisfy their professional obligation to zealously represent their client's interests during sentencing merely by reacting to information supplied by a reluctant client. Whether the client is unable or unwilling to assist them, counsel must exert reasonable efforts on behalf of their client.[5]

■ Trial defense counsel's efforts during sentencing also must be commensurate with the potential sentence and its collateral consequences. The appellant's assertion that his counsel failed in this regard is corroborated by the trial transcript. The record consists of 1021 pages reflecting a hotly contested trial covering seven separate days of hearings. Although the appellant was facing the maximum punishment of confinement for life and the potential loss of all retirement benefits, the defense case during sentencing consisted of only fifty-four words contained in the appellant's unsworn statement to the court. While trial defense counsel have sought to justify their actions and lack of a significant sentencing case as tactical decisions, not all their conduct conforms with the goals expressed by the ABA Standards.

Counsel state many times in their affidavits rebutting alleged ineffective assistance of counsel that matters in mitigation would have made no difference in this trial before this particular military judge. One counsel's belief was based upon his association with the trial judge and his knowledge of the trial judge's sentencing philosophy. Counsel's belief, if accurate, involves circular reasoning, as the military judge may not properly consider that which is not presented to him.[6] A military judge must consider all matters in extenuation, mitigation, and aggravation,

---

5. What is reasonable may depend, in part, on the degree of cooperation by the client. This is especially true if counsel explain the need for cooperation and the potential effect if it is lacking.

6. Trial defense counsel confuse the role of an advisor—i.e., what the likely outcome will be—with that of an advocate who must represent an accused's interest in creating a complete record that may shape disposition by reviewing and appellate authorities.

whether introduced before or after findings.[7] Trial defense counsel's reason for failing to submit matter in mitigation—a categorical determination that mitigation evidence would have no effect on this particular military judge—is unacceptable.[8]

Matter in mitigation is presented not only for the benefit of the trial judge, but also for the convening authority in determining whether to grant clemency, and for this court in fulfilling its obligation under Article 66, UCMJ. Matter in mitigation has the effect of placing the "whole man" before the military judge and other sentencing authorities. Counsel's obligation in this regard is to present to the court all factors and circumstances necessary to ensure the proper functioning of the adversarial process.

We could affirm the sentence in this case if we were satisfied that counsel had: (1) exerted reasonable means to identify potentially favorable evidence for use during sentencing; (2) adequately evaluated such evidence in the light of professional judgment and experience as applied to this particular case; and (3) made a reasoned tactical decision to use or not to use such evidence on the merits or during sentencing. *See, e.g., Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). In this case, the first step may have required the preparation of witnesses and affidavits, the discovery and perusal of documentary evidence, and consultation with psychiatric or other clinical experts to evaluate the appellant's sexual predilections. Because counsel apparently failed to do the first, they could not do the second or third in an adequate manner.[9]

Because of our disposition of the assigned error, we need not consider the other errors raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982).

The findings of guilty are affirmed.[10] The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

ECKER, Judge (concurring):

I concur with Judge Johnston's analysis and the case disposition. However, because I do view certain aspects of the record differently, I write separately to address those concerns.

The Sixth Amendment right to effective assistance of counsel encompasses a number of legal duties. Among these are the exercise of sound professional judgment, preparation of the case, and zealous advocacy. Conscientious effort, not perfection, frames the standard for our evaluation of counsel's performance. *See* Army Reg. 27–26, Legal Services: Rules of Professional Conduct for Lawyers, Rules 1.1–1.3, and comments (1 May 1992).

The lead opinion clearly delineates technical bases supporting the conclusion that counsel's performance was deficient. I would also suggest that the handling of appellant's unsworn statement reveals a lack of preparation in dealing with a known problem. Nevertheless, when viewed individually, justification on the basis of tactics can be argued to support each of counsel's decisions. If so viewed, one might conclude that, under

---

7. If a military judge refuses, as a matter of course, to adequately consider matter in mitigation, then that judge could be challenged for having an inelastic attitude toward sentencing.

8. A military judge must consider the "whole man" during sentencing to ensure that individualized sentencing occurs based on the facts and the particular accused before the trial court. If a military judge discourages counsel from performing their sentencing obligations because of a known or perceived affinity for "succinct, pointed presentations" that expedite sentencing, then the sentencing proceedings may not be reliable in producing a just result. *See United States v. Holt,* 33 M.J. 400, 412 (C.M.A.1991). As Senior

Judge Fulton noted, it is not appropriate that "expediting the trial should be made to loom larger in the sentencing process than those factors relating to the individual accused and the circumstances surrounding his offense." *United States v. Caruth,* 4 M.J. 924, 929 (A.C.M.R.1978).

9. We reach this conclusion on the basis of uncontroverted facts in the affidavits and the record of trial. *See United States v. Ginn,* 47 M.J. 236 (1997).

10. Ineffective assistance of counsel after findings of guilty may be sufficiently isolated as to permit affirming the findings of guilt. *Holt,* 33 M.J. 400.

*Strickland* and *Cronic,* no deficient performance occurred here.

However, when viewed from a "macro" standpoint, these matters take on a different cast. In this light, the overarching defect revealed in the record and post-trial affidavits is a failure of advocacy. This defect appears in two areas: abdication to the perceived wishes of the military judge and the actual sentencing presentation.

Concerning abdication, I note that of the twelve explanations given by defense counsel in support of their actions, six focus on perceptions of what would or would not be acceptable to the military judge. Putting the problem of perceptions aside, this concern about judicial attitudes was not pursued through voir dire of the judge. Voir dire might have served a number of useful ends, not the least of which would have been a more informed basis for the choice of forum.

Further, my review of those six explanations suggest that with a little creativity, presentations could have been crafted which would have avoided conflict with the judge without foregoing presentations on appellant's behalf. Thus, I am left with the impression that counsel gave the sentencing presentation the military judge wanted, rather than the one best suited for appellant's circumstance. *See Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("[C]ounsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in a particular case"). Such conservative representation is not advocacy, let alone zealous advocacy.

Next, counsel's sentencing argument also reflects an absence of advocacy. Counsel's argument on behalf of appellant, a first sergeant of a Ranger training company, who had also served as a first sergeant on two other occasions during twenty-four years of active service, took up thirty-one lines of a 1021 page record of trial. Further, counsel chose to focus the 300 words expended on appellant's sentencing argument as a complaint about the government's requested sentence rather than to fully develop why such a request was inappropriate. An additional consequence of this decision was to provide

absolutely nothing to challenge the sentencing authority's conscience, sense of justice, and view of the "whole man" pending sentencing. It also assumed that certain matters would be recognized and considered without assurance that the military judge was on the same sheet of music. This leaves too much to speculation and unnecessarily limited the record on which this court could evaluate the military judge's sentence. Thus, appellant was again deprived of meaningful, effective advocacy.

Finally, as a check on my analysis, I have considered Article 66(c), UCMJ. That article holds, in pertinent part, that "[The Court of Criminal Appeals] may affirm only such ... sentence ... as it finds ... on the basis of the entire record, should be approved." What this ultimately means to me is that, within the bounds of sound judicial restraint, we should not affirm a sentence unless we have confidence in it. *See also Strickland,* 466 U.S. at 687, 104 S.Ct. 2052 (the test for prejudice to the client is whether the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable"). Given my observations above, I do not have that requisite confidence. Accordingly, I believe that appellant must receive a rehearing on sentence.

GORDON, Senior Judge (dissenting):

I concur in the majority's statement of decisional law concerning an accused's right to the effective assistance of counsel. I do not agree, however, with their analysis of counsel's conduct in this case.

Contrary to the majority's conclusion, I believe the record of trial reflects a trial defense counsel effort that clearly meets the *Strickland* standards. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 M.J. 186 (C.M.A.1987). This is particularly true in light of *Strickland's* admonition that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. One need only read defense counsel's thirteen-page opening statement to realize that counsel were prepared for trial. Defense counsel

acknowledged that the case was one about credibility, recognized the appellant as a soldier with over twenty-four years of honorable service, and pointed out that the appellant had already attended his retirement ceremony. Counsel then proceeded to highlight that the defense would show that his accusers should not be believed.

During the trial the defense aggressively cross-examined government witnesses and presented evidence from ten witnesses on the merits, including the appellant. Evidence presented on the merits essentially covered appellant's military career since he returned from Korea with his three-year-old daughter, M, in 1979. The defense established appellant's assignments, the nature of appellant's duties in those assignments, where the appellant lived during his assignments, when his daughters lived with him (they lived for extended periods of time with various members of his family), and extensive information about appellant's family life and his relationship with his children. This information was presented through the testimony of the appellant, two of his sisters, fellow soldiers, and neighbors. The picture presented by the appellant was that of a hard-working, frequently deployed soldier, concerned about the welfare of his family. When the defense efforts failed to win complete acquittal (appellant was found guilty of seven of eighteen specifications, two of which were then dismissed by the military judge as multiplicious), counsel had to face sentencing knowing that they had few arrows left in their quiver.

Appellate defense counsel contend that the appellant received ineffective assistance of counsel because defense counsel presented no good military character evidence on the merits and presented no evidence on sentencing.

During pretrial preparation appellant had been reluctant to assist counsel in preparation for sentencing. Instead, he focused his efforts on preparing for the trial on the merits. He provided names of potential witnesses that had the ability to provide testimony on both the merits and sentencing. Defense counsel interviewed these witnesses, as well as others independently identified by counsel. As is fairly typical, some of these witnesses did not desire to testify on sentencing (but would testify on the merits). Some would testify, in essence, that the appellant was a good person who couldn't have committed the crimes, and others were willing to testify favorably regardless of the outcome of the trial on the merits. As trial strategy progressed, witnesses were selected to testify on the merits. The possible sentencing case, however, was another matter.

Although appellant's focus was on the merits, defense counsel proceeded to develop information that might be helpful in presenting a sentencing case. They obtained copies of evaluation reports concerning the appellant from him, but were unable to obtain copies of award citations. The appellant reviewed his Department of the Army (DA) Form 2A (Personnel Qualification Record–Part I) and DA Form 2-1 (Personnel Qualification Record–Part II) and informed his counsel that the information contained therein was accurate. At some point, the appellant presented counsel a draft unsworn statement, but after consultation with counsel, decided not to use it. Thus, as the trial approached, defense counsel had a well-developed strategy for the merits of the case, but little in the way of a separate sentencing "case."

Defense counsel, however, did not overlook the importance of sentencing evidence, and clearly developed information, to include good soldier evidence, that could have been presented. Unlike the majority's view of counsel's action, I find the steps counsel took to be appropriate. They interviewed witnesses that had information pertaining to both the merits and sentencing. They requested documentary evidence from the appellant. While perhaps more could have been done to track down award citations and other documentary evidence (e.g., requesting a copy of the appellant's Official Military Personnel File (OMPF)), I believe counsel's efforts were reasonable. The best source of such information is usually the appellant. If an appellant tells his counsel that he is unable to produce such information, and that it is available in his official files, then counsel can make appropriate requests. Given the nature of the charges in this case, and that

appellant only possessed two Army Commendation Medals, defense counsel were clearly within their discretion when they decided not to request his OMPF.

It is clear to me that the defense deliberately refrained from presenting any direct "good-soldier" evidence on the merits, as they were legitimately concerned about possible government rebuttal. The majority's bold assertion that the appellant's affair with a young enlisted soldier would not support an adultery charge is speculative. In any event, the affair need not have been criminal in order for it to call into question the appellant's status as a good soldier.

After the defense rested, the government indicated a desire to call First Sergeant McCaffrie in rebuttal. The defense immediately objected because "it's our understanding that this is for the purpose of rebutting a good soldier defense which has never been placed in evidence." Clearly, the strategy to not use a "good-soldier" defense was conceived prior to trial, not as a response to subsequent questions about why a good soldier defense was not used. In addition, the record indicates that when questioning military witnesses about the appellant's duty performance they refrained from asking opinion and reputation questions concerning appellant's qualities as a good soldier. This was a fine line to walk, as the defense presentation certainly portrayed the appellant, in a general sense, as a good soldier. This approach reflects a well thought-out approach to the case, and should be commended, not criticized.

The decision to not present any sentencing evidence in this case, beyond the appellant's unsworn statement, is easily understandable and well within established norms of competent representation. In a case where an appellant's "whole" life has been placed before the court, there is usually little left to present that is not redundant. Such was the case here. After the government introduced the appellant's DA Forms 2–1 and 2A, his entire career was, for all intents and purposes, before the court. Calling witnesses to add additional information about appellant's personal background would have added little. Defense counsel could also have called wit-

nesses to testify that the appellant was a good soldier. Their concern, however, about possible rebuttal evidence, still remained. The record established that the appellant had culminated a twenty-four-year Army career by serving as the First Sergeant of a Ranger training company. The appellant would not have been in such a position were he not a good soldier. Unlike a case involving a junior enlisted soldier with no record, the court had ample evidence of the appellant's military career before it.

Documentary evidence, though apparently not extensive, was available to the defense in the form of Noncommissioned Officer Evaluation Reports. Defense counsel decided not to use them, having determined them to be laudable, but not outstanding.

The majority is apparently concerned that counsel did not present a sentencing case because matters in mitigation would have made no difference before this particular judge. I read their affidavits differently. The point they make is not that the judge would not consider evidence in mitigation, but rather that the judge responded favorably to presentations which were focused, did not repeat points already made during the case in chief, and did not include information of limited utility. The lead defense counsel in this case had tried many judge-alone cases before this judge, had observed trials over a three-year period involving other counsel before this judge, and had attended several classes taught by him. I believe counsel has the responsibility to use information known to him about the trial judge when deciding how to approach sentencing.

Further, I find nothing unusual in this trial judge's "philosophy" about sentencing. Having placed the "whole man" before the judge during the trial on the merits, counsel could have competently decided to present no sentencing evidence, especially in light of their concerns about rebuttal to good soldier evidence. The decision to not pursue good soldier testimony is also buttressed by the nature of the offenses committed by the appellant. The appellant had little to gain, and perhaps much to lose, by presenting good soldier evidence. The majority's statement that sentencing evidence is presented not

only for the trial judge, but for the convening authority as well, overlooks the defense's ability to present matters to the convening authority which were not considered by the court-martial. Rule for Courts–Martial 1105, Manual for Courts–Martial, United States (1995 edition).

The dynamics of the sentencing process in this case support defense counsel's tactical decision not to present additional evidence on sentencing. As stated by the majority, the appellant made an unsworn statement on sentencing in which he, in essence, adamantly denied committing the offenses. Defense counsel felt that the appellant' unsworn statement was particularly compelling and powerful. It appeared to have a positive impact on the judge, who lost his usual in-court "poker-face." The judge also appeared to be very closely watching the demeanor and nonverbal interaction between the appellant and his daughter. Defense counsel avers that he felt that presenting additional evidence at that point, or eliciting further comment from the appellant, would only dilute the impact the appellant's statement had on the judge. Thus, defense counsel rested without presenting additional evidence.

This analysis is exactly what is required of counsel. Available sentencing evidence would have added little. There is no requirement for counsel to present evidence just to check a box. The decision made by counsel was right on the mark. He had to make a decision and he did. That call was well within his discretion and he should not be second-guessed now.

It is interesting to note that the judge took the extraordinary step of reconsidering his findings. That, in itself, lends considerable support to defense counsel's assessment of the judge's reaction to the appellant's statement.

Finally, I believe defense counsel's sentencing argument, although brief, to be competent advocacy. What did he do? He pointed out that the appellant was forty-six years old, and that the fifty-year sentence requested by government counsel would make the appellant ninety-six years old upon completion of his sentence. He noted the appellant's long and faithful service to his country. He stressed that a long sentence would not help appellant's daughter, M., who was already in the healing process, and would continue to get better. He proposed a reasonable alternative, ten years of confinement. Even then, the appellant would be fifty-six. Appellant's daughter, M, would have hopefully been healed by then. Counsel pointed out that the appellant's family would still be there for his daughters. Finally, counsel highlighted that, based on the judge's comments, a ten-year sentence for a child molester would be much harder than such a sentence for a different crime. I find this to be advocacy. The same points could have been made in five, ten, or more pages. But, the strength of an argument is what counts, not its length.

Even if I were to find that counsel's performance was deficient, thus violating *Strickland's* first prong, I can find no prejudice to the appellant. I have complete confidence in the sentence of the court. I would affirm the findings of guilty and the sentence.