# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
JOHNSON, KRAUSS, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist DANIEL A. DEMARSH**
**United States Army, Appellant**

ARMY 20110088

Headquarters, Fort Bliss
David H. Robertson, Military Judge
Colonel Francis P. King, Staff Judge Advocate

For Appellant:  Major Jacob D. Bashore, JA (argued); Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA (on brief).

For Appellee:  Captain Daniel H. Karna, JA (argued); Major Amber J. Roach, JA; Major LaJohnne A. White, JA; Captain Daniel H. Karna, JA (on brief).

10 September 2012

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Judge:

A military judge sitting as a general court–martial convicted appellant, pursuant to his plea, of willfully disobeying a superior commissioned officer in violation of Article 90, Uniform Code of Military Justice, 10 U.S.C. § 890 (2006) [hereinafter UCMJ].  Contrary to his plea, the military judge convicted appellant of abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920.  The military judge sentenced appellant to a bad–conduct discharge, confinement for eighteen months, and reduction to the grade of Private E–1.  The convening authority approved the adjudged sentence.

Appellant's case is now before this court for review under Article 66, UCMJ. We have carefully considered the record of trial, appellant's assignments of error, the matter appellant personally raised pursuant to *United States v. Grostefon*, 12

M.J. 431 (C.M.A. 1982), the government's response, and the matters discussed during oral argument. Appellant raised three assignments of error, one of which merits discussion. Appellant alleged that his defense counsel provided ineffective assistance of counsel during the sentencing phase of his court–martial because they failed to conduct a proper investigation and present evidence to the military judge. We agree that appellant did not receive effective assistance of counsel at the sentencing phase of his court–martial and order relief in our decretal paragraph.

**FACTS**

Two defense counsel represented appellant at his court–martial: Captain (CPT) TS and CPT JM. According to appellant's sworn affidavit, appellant informed CPT TS during their initial meeting that he wanted three soldiers to testify on his behalf as character witnesses: First Lieutenant (1LT) MS; First Sergeant (1SG) JQ; and Sergeant (SGT) MN. Appellant's affidavit further stated that he renewed his request to have all three soldiers testify on his behalf one month after the Article 32, UCMJ, investigation took place and again one week before his court–martial. None of the three soldiers appellant requested testified on his behalf at his court–martial.

After appellant's court–martial, 1LT MS and SGT MN provided sworn affidavits. First Lieutenant MS stated that he would have testified on appellant's behalf because appellant did an "outstanding" job during the unit's deployment. In fact, 1LT MS would have testified that appellant "worked twenty–four hour shifts to ensure the Patriot Launch Stations were always functioning and protecting our forces in theater." First Lieutenant MS completely trusted appellant "to get things done" and could leave appellant "unsupervised." First Lieutenant MS felt that appellant had rehabilitative potential because he "consistently sought out self–improvement," was enthusiastic, and consistently volunteered for additional tasks. Finally, 1LT MS would deploy with appellant again in the future despite knowing the substance of appellant's convictions. However, neither defense counsel contacted 1LT MS about testifying on appellant's behalf or providing a letter of support.

Sergeant MN stated that she would have testified on appellant's behalf because she felt he was a "hard worker" and an "outstanding" soldier. Sergeant MN served as appellant's squad leader starting in July 2010 and remained his squad leader until his court–martial. Sergeant MN would have testified that appellant volunteered for extra assignments and rated him as "an 8 or 9 out of 10." Sergeant MN also would "certainly deploy" with appellant if given the opportunity. In fact, SGT MN volunteered to speak on appellant's behalf at his court–martial without appellant even asking her if she would. However, neither defense counsel contacted SGT MN about testifying on appellant's behalf at his court–martial.

Captain TS provided an affidavit and documents pertinent to this case. One document contained a note from appellant listing "character witnesses," along with their phone numbers. Appellant listed SGT MN along with Sergeant First Class (SFC) WC and Specialist (SPC) AH. Appellant listed six names overall and also stated that "there are several soldiers listed on my TDS info packet that I turned into you." The intake form contained the names of 1SG JQ and 1LT MS, among others. There is no dispute between the affidavits as they relate to these facts. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997) (observing that a *DuBay* proceeding is unnecessary if the facts are uncontroverted).

Captain TS also provided an email dated 21 December 2010 that he sent to CPT JM. In CPT TS's email, he asked CPT JM to contact five soldiers who were potential character witnesses for appellant. This email contained the names of SGT MN, SFC WC, and SPC AH, along with their contact information. Captain JM provided an affidavit stating that he attempted to contact SGT MN twice on 21 and 22 December 2010. He did not speak with SGT MN, but did state that he left a voice message. In his response to CPT TS's email, CPT JM stated that he spoke with a SPC P, and left messages for the rest of the soldiers.

In CPT TS's affidavit, after stating that no one contacted 1LT MS, 1SG JQ, or SGT MN, CPT TS did raise one concern he had at sentencing. This concern was "written statements demonstrating that [appellant] knew the [s]oldiers he was with had cocaine and were using it in his presence, though there was no indication that he himself had used any cocaine." Captain TS did not list any other potential "negative information" and did not explain this matter further.

After defense counsel provided affidavits and documents pertinent to this case, appellant submitted affidavits from SFC WC and Corporal (CPL) AH. According to SFC WC's affidavit, appellant told SFC WC that he was going to put his name on appellant's witness list, and SFC WC stated he would have testified on appellant's behalf. Sergeant First Class WC had served in the Army for twenty–five years and had deployed to a combat zone five times over the course of his career. Sergeant First Class WC served as appellant's first sergeant beginning in the summer of 2010. Sergeant First Class WC felt appellant was "an above average" soldier who he could always trust to get the job done. Appellant stood out to SFC WC because "he was always volunteering his time to help others[,]" which was vital in developing appellant's strong character. Ultimately, SFC WC believed appellant possessed rehabilitative potential "because of his work ethic and his daily demeanor." Finally, SFC WC would deploy with appellant in the future despite knowing what offenses he committed. However, neither defense counsel contacted SFC WC.

Corporal AH was then-SPC AH at the time of appellant's court–martial. In his affidavit, CPL AH verified that the phone number appellant provided to CPT TS

was his correct contact information. In fact, CPL AH still had the same phone number at the time he executed his affidavit, and this number matched the contact information appellant provided to CPT TS. Corporal AH stated that appellant did ask him to testify at his court–martial, and CPL AH agreed to testify. Appellant asked CPL AH's permission to pass along his contact information to his attorney, and CPL AH agreed. Corporal AH would have testified about appellant's extensive volunteer work in the local community. Corporal AH also thought appellant was "a really good [s]oldier[,]" and would have rated him "as an 8 of 10." Despite knowing about appellant's convictions, CPL AH "definitely" thought appellant could be rehabilitated and become a productive member of society. Further, CPL AH would "certainly deploy" with appellant in the future if given the opportunity. However, neither CPT TS nor CPT JM contacted CPL AH.

Despite CPT TS's email to CPT JM on 21 December 2010 asking CPT JM to contact SFC WC and CPL AH, CPT JM submitted an additional affidavit stating that he did not attempt to contact either witness because he did not know about them. This contradicts the email CPT JM sent CPT TS on 22 December 2010 where CPT JM informed CPT TS that he allegedly left a message for SFC WC and CPL AH to contact him.

Doctor YK, a clinical psychologist, testified during appellant's sentencing proceeding. She diagnosed appellant with "Pervasive Developmental Disorder, Adjustment Disorder with mixed anxious and depressed mood, and sexual abuse as a child." Doctor YK further testified that "the Army has helped [appellant] function better" because the "structure, rules, regulations help him perform in ways that are more consistent."

In his unsworn statement during the sentencing proceeding, appellant stated "I want nothing more than to finish my 5–year contract for the U.S. Army."

Finally, CPT TS provided a second affidavit and did not recall speaking to either SFC WC or CPL AH. However, CPT TS stated that he would not have presented SFC WC or CPL AH's testimony because the victim and appellant's current battery commander would have testified that they would not want to deploy with appellant. In addition, while appellant discussed his volunteer work during his unsworn statement, CPT TS's understanding was that the volunteer work was done as part of appellant's normal duties. Captain TS reiterated that his sentencing strategy was to rely upon appellant's diagnosis of pervasive developmental disorder. Captain TS did not rely upon appellant's service record or potential for future service because appellant "seemed to be an able but unremarkable [s]oldier."

4

**LAW**

Appellant bears the burden of satisfying the well–known two–part test to establish ineffective assistance of counsel: "that the performance of his counsel was deficient and that he was prejudiced thereby." *United States v. Weathersby*, 48 M.J. 668, 670 (Army Ct. Crim. App. 1998) (citing *Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Scott*, 24 M.J. 186 (C.M.A. 1987)). Regarding the first prong, counsel is presumed competent; thus, appellant "must rebut the presumption by pointing out specific errors made by his defense counsel which were unreasonable under prevailing professional norms." *Weathersby*, 48 M.J. at 670 (citing *United States v. Cronic*, 466 U.S. 648 (1984)). While strategic choices made after a thorough investigation of law and facts are virtually unchallengeable, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

To establish prejudice and meet the second prong, appellant must show that "counsel's errors were so serious as to deprive the accused of a fair trial, a trial whose result is reliable." *Weathersby*, 48 M.J. at 670 (citing *Strickland*, 466 U.S. at 687). This requires appellant to show that the errors had more than "some conceivable effect" on the proceedings, but appellant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.

The two–part test appellant must satisfy "applies to . . . sentencing hearings that may have been undermined by ineffective assistance of counsel." *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000) (citations omitted). Ineffective assistance of counsel can occur during the sentencing process in a variety of ways:

> Perhaps the most frequently encountered situation is when counsel either fails to investigate adequately the possibility of evidence that would be of value to the accused in presenting a case in extenuation and mitigation or, having discovered such evidence, neglects to introduce that evidence before the court–martial. Notably, in these situations, the record of trial will not include that evidence that counsel should have presented, but did not, at the court–martial; that evidence was never introduced.

*United States v. Boone*, 49 M.J. 187, 196 (C.A.A.F. 1998) (footnotes omitted).

"[T]o raise ineffectiveness of counsel for failure to locate a witness, an appellant must allege specific information that counsel could have located the witness after a reasonable investigation, that the witness would have been available

to testify, and that the substance of the witness's testimony would have assisted the appellant's defense." *United States v. Russell*, 48 M.J. 139, 141 (C.A.A.F. 1998) (citing *Doucette v. State*, 463 A.2d 741, 745–46 (Me. 1983)).

## DISCUSSION

We find that appellant's defense counsel provided constitutionally deficient assistance when they failed to investigate the possibility of presenting witnesses who could discuss appellant's positive rehabilitation potential.  Given their inadequate investigation, appellant's defense counsel also failed to present testimony of several possible witnesses at the sentencing phase of appellant's court–martial.  These witnesses, such as 1LT MS, SFC WC, SGT MN, and CPL AH, would have testified that appellant's military performance and volunteer work were sufficiently commendable to permit the conclusion that he possessed rehabilitative potential. This error prejudiced appellant because the absent testimony might well have led to a lower sentence.  We will discuss each part of the *Strickland* test in turn.

### A.  Deficient Performance

At the sentencing phase of a court–martial, prevailing professional norms require defense counsel to "take particular care to make certain that the record of the sentencing proceedings will accurately reflect all relevant mitigating circumstances relating either to the offense or to the characteristics of the [accused] which were not disclosed during the guilt phase of the case." *Weathersby*, 48 M.J. at 671 (citation omitted).  Moreover, matters in extenuation and mitigation are not only helpful for the sentencing authority, "but also for the convening authority in determining whether to grant clemency, and for this court in fulfilling its obligation under Article 66, UCMJ." *Id.* at 673.  Thus, counsel must present "all factors and circumstances necessary to ensure the proper functioning of the adversarial process." *Id.*  More importantly, what we stated in *Weathersby* particularly applies in appellant's case:

> We could affirm the sentence in this case if we were
> satisfied that counsel had: (1) exerted reasonable means to
> identify potentially favorable evidence for use during
> sentencing; (2) adequately evaluated such evidence in the
> light of professional judgment and experience as applied
> to this particular case; and (3) made a reasoned tactical
> decision to use or not to use such evidence . . . during
> sentencing.

*Id.* (citation omitted).

6

Appellant's defense counsel failed the first necessary step because they did not exert "reasonable means" to identify potentially favorable evidence concerning appellant's positive rehabilitative potential. Simply put, the first step requires counsel to speak with potential witnesses. It is uncontroverted that appellant's defense counsel did not speak with 1LT MS, 1SG JQ, SFC WC, SGT MN, or CPL AH. The record and affidavits offer no good reason for the failure of defense counsel to contact and interview these witnesses.

The affidavits submitted by 1LT MS, SFC WC, SGT MN, and CPL AH demonstrate that they should have been located after a reasonable investigation. Moreover, 1LT MS, SFC WC, SGT MN, and CPL AH readily would have agreed to serve as witnesses on appellant's behalf if they had been contacted prior to appellant's court–martial. In sum, appellant's defense counsel failed to reasonably uncover favorable evidence to use during appellant's sentencing proceeding.

It is elementary for defense counsel to explore the potential for introducing good military character evidence at sentencing to demonstrate that appellant's actions were out of character on an isolated occasion. In fact, prevailing professional norms and our adversarial system demand that defense counsel thoroughly investigate possible evidence in extenuation and mitigation to assist the sentencing authority in fashioning a just sentence. *United States v. Sadler*, 16 M.J. 982, 983 (A.C.M.R. 1983). Appellant's defense counsel failed this elementary task, and this initial failure did not allow counsel to evaluate the potential evidence and make a reasoned tactical decision to use or not use such evidence. *See Alves*, 53 M.J. at 290 (stating that "[w]ithout interviewing the witnesses, . . . defense counsel was not in a position to make a tactical decision as to whether the witnesses would or would not have been valuable character witnesses"); *Weathersby*, 48 M.J. at 673 (recognizing that because counsel failed to identify potentially favorable evidence, they could not adequately evaluate such evidence and make reasoned tactical decisions about its use).

Without even investigating or having full knowledge of appellant's rehabilitative potential, CPT TS posits that he would not have presented such evidence because of potential rebuttal testimony from the victim and appellant's current battery commander. Captain TS did not elaborate on what the basis would be for the current battery commander's opinion of appellant or upon what foundation his opinion would be based. In any event and as previously explained, such potential rebuttal evidence does not excuse an initial lack of investigation, as a defense counsel cannot make tactical decisions regarding rehabilitative potential without having a clear picture of what all of the potential witnesses would testify to in the first place.

*B. Prejudice Analysis*

Having considered the totality of the circumstances, we are convinced defense counsel's failure to properly investigate and present potential evidence in extenuation and mitigation prejudiced appellant. We are not confident in the reliability of appellant's sentence when such extensive evidence of rehabilitative potential was neglected and not even uncovered by defense counsel. Evidence that many soldiers, including supervisors, were willing to testify as to appellant's positive rehabilitative potential, despite the offenses of which he was convicted, demonstrate appellant still possessed redeeming qualities to offer either the military or society as a whole. This information could have bolstered Dr. YK's testimony that the Army's structure and rules helped appellant function better. Moreover, this information would have bolstered and supported appellant's desire to complete his enlistment contract.

At this point, appellant has not had the opportunity to fully develop the extenuating and mitigating circumstances applicable to his case. The affidavits submitted by 1LT MS, SFC WC, SGT MN, and CPL AH demonstrate appellant to be more than an "able" soldier. The affidavits paint the portrait of an above average soldier, both in garrison and in a deployed environment, with the rehabilitative potential for future continued service. The record does not contain this evidence and neither the sentencing authority nor the convening authority heard this evidence. In sum, appellant must be given the opportunity that he never received. *See Boone*, 49 M.J. at 198 (concluding that "Boone must have the opportunity to make the record that he did not have the opportunity to make because of the absence of the guiding hand of counsel"). In addition, when the ineffectiveness of counsel results in the omission of evidence that could have made a difference in the adjudged and approved sentence, this court "cannot reassess the sentence accurately . . . because the record is not complete." *Id.* at 198–99.

## CONCLUSION

The findings of guilty are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Senior Judge JOHNSON and Judge KRAUSS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court