# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E1 DAMIAN M. TAYLOR**
**United States Army, Appellant**

ARMY 20180304

Headquarters, 1st Cavalry Division
Jacob D. Bashore, Military Judge
Colonel Emily C. Schiffer, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Major Julie L. Borchers, JA; Captain Alexander N. Hess, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Captain John D. Martorana, JA (on brief).

21 October 2019

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

RODRIGUEZ, Judge:

On appeal, appellant claims his defense counsel were ineffective for failing to impeach the victim, Private (PVT) LP, about a prior inconsistent statement she made to law enforcement, and for introducing into evidence PVT LP's prior consistent statement she made to the Sexual Assault Forensic Examination (SAFE) nurse.[1] This

---

[1] A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of sexual assault on PVT LP when he knew or reasonably should have known she was asleep, in violation of Article 120, 10 U.S.C. § 920, Uniform Code of Military Justice [UCMJ]. Consistent with appellant's pleas, the military judge also convicted him of three specifications of sexual assault of a child in violation of Article 120b, UCMJ, 10 U.S.C. § 920b. The military judge sentenced appellant to a dishonorable discharge and confinement for fifty months.

(continued . . .)

court ordered affidavits from appellant's trial defense counsel to explain their rationale behind their challenged conduct. After reviewing both counsels' affidavits, we find the trial defense counsels' decisions adhered to an objectively reasonable case strategy, and were not deficient.[2] Accordingly, we affirm appellant's conviction and sentence.[3]

## BACKGROUND

### *The Sexual Assault*

Appellant met PVT LP in January 2017, while in-processing at Fort Hood, Texas. In the afternoon of 14 January 2017, appellant and PVT LP visited the home of one of appellant's friends, JS. Once there, everyone, except JS' wife, began drinking alcohol while they watched movies. Private LP consumed two to three mixed whiskey drinks and five to six whiskey shots throughout the afternoon and evening. By 2200 hours, feeling "groggy" and sick, PVT LP went to the bathroom to throw up several times. Then, she went to lie down on an air mattress in the guest bedroom where appellant and PVT LP had earlier agreed to sleep. Once in the bedroom, PVT LP briefly spoke with her brother on the phone, and then went to sleep.

Sometime during the night, PVT LP woke up to find her "skinny jeans" pulled down her legs, and appellant lying behind her on the air mattress digitally penetrating her vulva. After "swatting" appellant's hand away, she went back to sleep, and then woke up again with her jeans pulled further down her legs while appellant, from behind her, this time penetrated her vulva with his penis.

---

(. . . continued)
Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence providing for a dishonorable discharge and confinement for thirty-six months.

[2] Under the circumstances of this case, we see no need to order a fact-finding hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967) because the factual predicate underlying appellant's claim of ineffectiveness does not contradict the affidavits submitted by his trial defense counsel. Applying the third factor in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), this court can proceed to decide the legal issue without a post-trial evidentiary hearing.

[3] We have considered appellant's other assigned error claiming his convictions for sexually assaulting PVT LP are legally and factually insufficient, as well as the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they warrant neither discussion nor relief.

Private LP "wanted to get away" from appellant and tried to move away from him; he eventually stopped and left the room. Once appellant left the room, PVT LP locked the bedroom door, began to cry, and texted appellant to "[w]ake up [JS and his wife]," because she wanted to go home. Appellant complied, and in the early morning hours of 15 January 2017, JS' wife drove PVT LP to her barracks.

On 17 January 2017, PVT LP consulted with a registered nurse as part of a Sexual Assault Forensic Examination (SAFE), and described her sexual assault at the hands of appellant. The SAFE nurse recorded her examination of PVT LP in a fourteen-page SAFE report. After the SAFE examination, PVT LP gave a statement to Army Criminal Investigation Command (CID) Special Agent (SA) AS about appellant sexually assaulting her.

*The Prior Inconsistent Statement*

During cross-examination at trial, PVT LP testified she could not remember telling SA AS that when she woke up for the first time to appellant digitally penetrating her vulva, appellant was on top of her. PVT LP's specific exchange with the defense counsel at trial is as follows:

> Defense Counsel [DC]: Was [appellant] behind you or on top of you?
>
> PVT LP: I think he was behind me, ma'am.
>
> DC: So going back to the interview that you had with [SA AS] back in January, do you remember telling [SA AS] that when you woke up [appellant] was on top of you?
>
> PVT LP: No, ma'am.
>
> DC: So do you think that you did tell him or you didn't?
>
> PVT LP: I may have, ma'am. I don't remember much of it.

In addition to this exchange, PVT LP testified that she could not remember several other details from the evening, such as appellant "being the first one to start drinking" at JS' home, how many drinks she had during the evening, or how many movies they watched.

3

*The Prior Consistent Statement*

After PVT LP testified, the government sought to introduce into evidence, through the SAFE nurse, one page of the SAFE report that consisted of the nurse's notes recording PVT LP's description of the sexual assault. Trial defense counsel objected to this evidence on hearsay grounds, and the military judge sustained the objection. Later during trial, the government attempted to admit into evidence a different page from the SAFE report documenting the nurse's observations during her examination of PVT LP's vaginal area, which showed abrasions consistent with some sort of penetration. Again, the defense objected on hearsay grounds, but the military judge ruled that this page of the SAFE report was admissible as a record of a regularly conducted activity under Military Rule of Evidence [Mil. R. Evid.] 803(6). At this point, defense counsel moved to admit the entire SAFE report under Mil. R. Evid. 106, including the previously objected-to page containing PVT LP's description of the sexual assault.

*Appellant's CID Statement*

At trial, the government introduced into evidence appellant's video-recorded statement to SA AS. Here, appellant described consuming six mixed whiskey drinks and two whiskey shots at JS' home during the afternoon and evening hours of 14 January 2017. He stated that he had gaps in his memory too, but recalled being on the air mattress talking with PVT LP, that she told him to scoot closer to her and share her pillow, and that at some point while they spoke he put his hand down into her pants but she "kind of moved it away." While appellant could not specifically recall the act of penetrating PVT LP's vulva with his penis, he remarked "I know I was inside of her but I don't know how I got there." Appellant said that PVT LP stated "not tonight," and that was when he left the room.

*Defense Case Theory*

During the defense case, a psychiatrist qualified as an expert on the effects of alcohol on the brain testified about how excessive alcohol consumption could interfere with a person's formation of memories, causing "blackouts," which prevent the brain from transferring memories from its short-memory to long-term memory. The expert testified that these blackouts can be complete or fragmentary in nature and, often, "if there are gaps in memory, sometimes we tend to fill it in based on other people's accounts or just sort of confabulating new memories." Having listened to PVT LP's trial testimony and reviewing her CID statement, the expert opined that the apparent gaps of her memory would be consistent with a possible fragmentary blackout after having ingested "enough alcohol." The expert also stated that the sensation of "waking up" was consistent with the sensation a person would feel coming out of a fragmentary blackout.

4

In closing argument, defense counsel argued the government had not met its burden to prove the two sexual assault specifications against appellant beyond a reasonable doubt. The defense argued the evidence concerning the assaults was from two "highly intoxicated" young adults, with no objective scientific evidence such as DNA tying appellant to the sexual acts. Defense counsel also argued that, as the expert had testified, the human brain is uncomfortable with gaps in memories, and appellant's CID statement was "the product of [appellant] filling in those gaps in memory with" what the CID SA said happened. In argument, defense counsel also asserted that while PVT LP remembered being asleep, it was "entirely possible" that she "just doesn't remember," and when she stated that she woke up, she was possibly coming out of a fragmentary blackout.

## LAW AND DISCUSSION

The Sixth Amendment guarantees an accused the right to the effective assistance of counsel for his defense. *United States v. Cronic*, 466 U.S. 648, 653-56 (1984). Allegations of ineffective assistance of counsel (IAC) involve mixed questions of law and fact, but questions of deficient performance are reviewed de novo. *United States v. Rose*, 71 M.J. 138, 143 (C.A.A.F. 2012).

In order to establish defense counsel's deficient performance, an appellant must establish that counsel's "representation amounted to incompetence under 'prevailing professional norms. . . .'" *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). Specifically, an appellant must demonstrate that (1) his counsel's performance was deficient, and (2) the deficiency resulted in prejudice. *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687). The proper inquiry under the first prong is whether counsel's conduct fell below an objective standard of reasonableness, or was outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The second prong is satisfied by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. (emphasizing that the standard is less than a preponderance). In assessing an appellant's IAC claim, the performance and prejudice prongs of *Strickland* can be analyzed independently and if appellant fails either prong, his IAC claim fails. *Strickland*, 466 U.S. at 697.

On appellate review, there is a strong presumption that counsel was competent. *United States v. Grigoruk*, 56 M.J. 304, 306–07 (C.A.A.F. 2002) (citing *Strickland*, 466 U.S. at 689). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. The inquiry does not look to success at trial, but to whether counsel's choice of strategy

was objectively reasonable when weighed against available alternatives. *United States v. Akbar*, 74 M.J. 364, at 379 (C.A.A.F. 2015).

### A. Private LP's Prior Inconsistent Statement

Appellant claims his trial defense counsel were deficient because they could have attempted to refresh PVT LP's recollection of her statement to CID by playing for her the portion of her interview where she stated appellant was on top of her when she woke up. Appellant contends that doing so would have enabled defense counsel to present the fact finder with PVT LP's prior statement to CID which was inconsistent with her trial testimony concerning finding appellant lying behind her upon waking up. Presumably, appellant's counsel could have also sought to either admit PVT LP's video-recorded statement to CID under Mil. R. Evid. 803(5) as a recorded recollection, or perhaps through cross-examination of SA AS, as extrinsic evidence of a prior inconsistent statement under Mil. R. Evid. 613(b).

We disagree with appellant's assertion and conclude his defense counsel's strategic decision not to present this evidence was a sound trial strategy. This case centered on whether the military judge, as finder-of-fact, believed that either PVT LP woke up from her sleep to find appellant sexually assaulting her twice, or that the fragmentary blackouts she suffered that evening prevented her from recalling that she consented to sexual activity with appellant. Given appellant's own admissions to CID concerning his engaging in sexual activity with PVT LP during the evening in question, the defense case theory was that appellant and PVT LP engaged in consensual sexual activity at JS' home. This theory hinged on showing that PVT LP drank so much that she experienced fragmentary blackouts, and simply did not remember participating in consensual sexual activity with appellant during such blackouts (some of which, to her, resembled the sensation of waking up from sleep).

We find that defense counsels' theory of the case is objectively reasonable and does not, on its face, fall outside the "wide range of professionally competent assistance." In fact, defense counsel's cross-examination of PVT LP at trial was quite effective in showing several gaps in her memory of the events in question. Because PVT LP's trial testimony largely corroborated appellant's own earlier admissions to CID, his trial defense counsel deployed a strategy that, based on counsels' perspective at the time, reasonably explained appellant's admissions by showing PVT LP's faulty memory and perception of key events during the evening. This strategy did not need to show PVT LP's lack of credibility. As trial defense counsel stated in her affidavit:

> Our theory did not require proving [PVT LP] was
> untruthful. Attacking the alleged victim as a liar is always
> risky. [We] discussed whether the cross-examination was

successful in establishing that [PVT LP] experienced a
fragmentary blackout. We determined it did. . . . [T]he
primary reasons we did not complete the impeachment
were we did not want to be perceived as bullies and we did
not want to make [PVT LP] sympathetic. . . . [H]ad an
attempt to refresh her memory failed, we would not have
offered the prior inconsistent statement under [Mil. R.
Evid.] 803(5) as substantive evidence because it would
have contradicted our client's version of events.

Appellant admitted to CID he laid down on the air mattress behind PVT LP
when he put his hands into her pants. It would have been harmful to the defense
case to try to establish otherwise at trial because it would have, at the very least,
contradicted appellant's own version of the events to CID. Trial defense counsel
were faced with a predicament forcing them to decide whether it was worth pursuing
a line of questioning that would undermine PVT LP's credibility, but also undermine
their client's credibility. That counsel chose to preserve their own client's
credibility is an objectively reasonable trial strategy.

### B. Private LP's Prior Consistent Statement

Appellant next argues his trial defense counsels' performance was deficient
for "inexplicably" moving to admit the entire SAFE report into evidence after
successfully preventing the admission of a page of the report containing PVT LP's
description of the assault. This description was consistent with PVT LP's trial
testimony. Appellant argues that there was no reasonable trial strategy or tactic that
would permit the admission of PVT LP's prior consistent statement, and that in "a
credibility contest like this case," defense counsels' actions bolstered PVT LP's
testimony prejudicing appellant.

Again, we disagree. This case was about whether the sexual activity between
PVT LP and appellant was consensual or not. The admission of the entire SAFE
report provided little, if any, probative evidence enhancing the likelihood that
appellant sexually assaulted PVT LP. In fact, since the military judge permitted the
government to admit into evidence a portion of the SAFE report, the defense counsel
reasonably sought admission of the entire report because it contained evidence
elsewhere in the report that enhanced the defense's theory of the case. As trial
defense counsel stated in her affidavit:

In pretrial preparation, I reviewed the [SAFE] report and
did not consider [it] overly harmful to the defense case,
even with some detrimental information, as it was
consistent with our theory of consensual sexual activity
during a fragmentary blackout. Certain statements in the

7

patient history section were helpful for the defense case: that [PVT LP] couldn't remember if [appellant] went with her to the bedroom . . . and that she stated 'he kissed my mouth' which supported part of our theory that she minimized her objectively consensual intimate activity with [appellant]. . . . [T]he fact that she remembered some things but not others means she was experiencing a fragmentary blackout. . . . [T]o the extent the statements in the narrative portion [of the report] were consistent with [PVT LP's testimony during] direct examination, the appellate counsel exaggerates their significance. Those statements were consistent with the defense theory.

Unlike earlier in the trial when defense counsel successfully prevented the admission of PVT LP's description of the sexual assault in the SAFE report, here, the circumstances changed. Defense counsel were faced with the hurdle that the military judge allowed into evidence a page from the SAFE report documenting PVT LP's vaginal injuries. These injuries could also be consistent with consensual sex. In order to argue that the injuries resulted from consensual sex, defense counsel relied on the theory that PVT LP experienced a fragmentary blackout to explain why she did not recall consenting. The SAFE report supported the defense's fragmentary blackout theory. It contained evidence of gaps in PVT LP's memory in what she related to the SAFE Nurse, which bolstered the defense's presentation of evidence through its expert concerning fragmentary blackouts. When weighed against plausible alternatives, trial defense counsel's choice of strategy was within the "wide range of reasonable professional assistance."

## C. Prejudice

Even assuming the challenged conduct was deficient, appellant also fails to demonstrate that his trial defense counsel's errors were so serious as to deprive him of a fair trial. There is no reasonable probability of a different outcome if PVT LP had been refreshed with her prior inconsistent statement to CID. As we stated above, this approach also would have cut against the defense because it would have contradicted appellant's statement to CID. Similarly, although PVT LP's detailing of the sexual assault to the SAFE nurse was consistent with her trial testimony, it also supported the defense case theory that PVT LP experienced a fragmentary blackout and did not recall consenting to sexual intercourse with appellant. We are confident appellant was not deprived "of a fair trial, a trial whose result is reliable." *United States v. Weathersby*, 48 M.J. 668, 670 (Army Ct. Crim. App. 1998) (citing *Strickland*, 466 U.S. at 687).

8

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge BURTON and Judge FLEMING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 DAMIAN M. TAYLOR**
**United States Army, Appellant**

ARMY 20180304

---

NOTICE OF COURT-MARTIAL ORDER CORRECTION

---

IT IS ORDERED THAT, to reflect the true proceedings at the trial of the above-captioned case,

GENERAL COURT-MARTIAL ORDER NUMBER 16, HEADQUARTERS, 1ST CAVALRY DIVISION, BUILDING 28000, 761ST TANK BATTALION AVENUE, FORT HOOD, TEXAS 76544, dated 16 October 2018,

IS CORRECTED AS FOLLOWS:

BY reflecting the accused's rank as Private E-1.

DATE: 21 October 2019

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court