# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Captain JAMES H. LEE**
**United States Army, Appellant**

ARMY 20140309

Headquarters, National Training Center and Fort Irwin (trial)
Headquarters, Fires Center of Excellence and Fort Sill (*DuBay* hearing)
Douglas K. Watkins, Military Judge (trial)
Marc Cipriano, Military Judge (*DuBay* hearing)
Lieutenant Colonel Jeffrey A. Miller, Staff Judge Advocate
Major Jess R. Rankin, Acting Staff Judge Advocate (*DuBay* hearing)

For Appellant:  Colonel Kevin Boyle, JA; Lieutenant Colonel Charles D. Lozano, JA (on brief); Colonel Mary J. Bradley, JA; Lieutenant Colonel Charles D. Lozano, JA (on reply brief); Lieutenant Colonel Charles D. Lozano, JA (on supplemental brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major John K. Choike, JA; Captain Robyn M. Chatwood, JA (on brief); Major Cormac M. Smith, JA (on supplemental brief).


24 May 2017

-----------------------------------------------------------------
MEMORANDUM OPINION ON FURTHER REVIEW
-----------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Senior Judge:

In this guilty plea case, defense counsel was not deficient for not independently discovering the depth and breadth of appellant's mental health history.  Even assuming deficiency, we find defense counsel's failures did not result in a reasonable probability that the court-martial outcome would have been different but for counsel's deficiencies.

A military judge sitting as a general court-martial convicted appellant, pursuant to his plea, of presenting for approval and payment a false claim against the United States, in violation of Article 132, Uniform Code of Military Justice, 10

U.S.C. § 932 (2012) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dismissal and a fine in the amount of $3,500.00.

On 25 May 2016, the Court of Appeals for the Armed Forces (CAAF) concluded this court erred by not ordering a fact-finding hearing pursuant to *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967), regarding appellant's claims of ineffective assistance of counsel. *United State v. Lee*, 75 M.J. 347 (C.A.A.F. 2016). The CAAF then returned the case to this court. *Id*.

On 2 June 2016, we ordered a *DuBay* hearing to examine the facts surrounding appellant's allegations that his trial defense counsel was ineffective in failing to identify and investigate potential mitigation evidence. *See United States v. Lee*, ARMY 20140309 (Army Ct. Crim. App. 2 Jun. 2016) (order).

The *DuBay* hearing concluded 13 July 2016 and the record of trial returned to this court for further review on 9 February 2017, at which time defense appellate counsel was served with the record. We granted appellate defense counsel's motion to file a post-*DuBay* brief. The results of the *DuBay* hearing and appellant's post-*DuBay* brief inform this decision.

This case is again before us for review pursuant to Article 66, UCMJ, on the issue of ineffective assistance of counsel.

## BACKGROUND

While doing a Do-It-Yourself move during his change of duty station, appellant purchased multiple bags of cement, put them in his car, weighed his car, and then immediately returned the cement for a refund. Upon arrival at his new duty station, appellant submitted a false claim for reimbursement based upon the fraudulent weight ticket. When appellant's misconduct was discovered, he readily confessed and provided sworn statement to criminal investigators.

After confessing, he met trial defense counsel, Major (MAJ) GC, who reviewed the facts of his case and explained the impact of his confession. Major GC advised appellant to withdraw his travel claim to minimize the financial impact on the government—which appellant did. Eventually, a single charge and specification of making a fraudulent claim against the United States was preferred against appellant.

*Resignation in Lieu of Court-Martial*

After preferral of the charge, MAJ GC met with appellant and explained his rights to him including appellant's right to present evidence and witnesses at trial and before sentencing. He also informed appellant he could attempt to resign in an

2

attempt to avoid a trial. Appellant decided to offer the GCMCA a resignation-in-lieu-of-court-martial. As part of his offer to resign, appellant underwent a mental health evaluation in which he was diagnosed with dysthymic disorder and major depressive disorder by Captain (CPT) DM, a clinical psychologist at the behavioral health clinic. The evaluation was documented and placed in appellant's resignation packet by appellant's chain of command. Neither the chain of command nor the trial counsel provided MAJ GC with a copy of the mental health evaluation form. Major GC did not file a motion for discovery. As a result, MAJ GC did not review the provider's mental health assessment placed in the resignation packet.

*Review of Mental Health Records*

As part of the pre-separation screening for his offer to resign, appellant indicated on a "report of medical history" form that he had no history of psychiatric or behavioral health problems and had not received any counseling of any type. In a separate "report of medical assessment" form, appellant indicated he did not suffer from any illness for which he sought medical care nor did he have any health concerns. Appellant's defense counsel apparently did review these documents. Appellant has now admitted the information he provided in those forms was not accurate because he feared negative repercussions to his military career if he admitted having mental health issues.

Appellant spoke to many mental health care providers. Appellant met with his primary care doctor and reported depression and anxiety and saw a psychologist to whom he reported anxiety, panic attacks, and depression. He was then interviewed by a social worker, to whom he reported depression and suicidal ideation. He also met with the officer-in-charge of the behavioral health clinic who diagnosed him with adjustment disorder and depressive mood and prescribed him with Zoloft. Finally, between referral and the time of trial, he met twice with CPT DM, who diagnosed him with dysthymic disorder and recurrent and moderate major depressive disorder with fleeting thoughts of suicide. Of note, CPT DM also indicated appellant was fit for duty and could complete the administrative separation process.

Appellant did not disclose his history of depression, suicidal ideation, and suicidal gestures to MAJ GC. In addition, appellant did not disclose his depression or mental health history to his family or his chain of command.[1] Major GC indicated

---

[1] Appellant saw a hypnotherapist outside the military medical system for anxiety leading up to the trial. He disclosed this to MAJ GC, who decided it would not be necessary to call the hypnotherapist given the theme of the presentencing case—that of remorse. Appellant also disclosed to his defense counsel that he was meeting

(continued . . .)

he reviewed the appellant's records, wherein appellant indicated no history of behavioral health problems. Major GC, however, did not receive and therefore did not review the mental health diagnosis in appellant's resignation packet, nor did he seek appellant's mental health records, or ask his client for details about his mental health history. Appellant did, however, indicate to MAJ GC, during the course of his representation, that he had appointments at the behavioral health clinic. Appellant also indicated he was struggling with depression and anxiety and worries about post-military employment opportunities. Major GC assumed appellant was seeking behavioral health counseling for stress related to the court-martial process.

Major GC testified at the *DuBay* hearing that his trial tactics would have been different had he been aware of appellant's mental health issues. He stated that the theme of the presentencing case would have changed to one of compassion and reliance in the face of mental health issues.

*Witness Review*

The theme of appellant's presentencing case was immediate acceptance of responsibility, remorse, excellent duty performance, and excellent rehabilitative potential. In preparation for trial, appellant provided a witness list to MAJ GC containing the names of thirty-nine possible witnesses. Major GC asked appellant to reduce the list to his top ten witnesses. Appellant provided a revised list of eleven witnesses.[2]

Both appellant and MAJ GC testified at the *DuBay* hearing. Appellant testified that CPT DM's name was on the list. Major GC did not interview CPT DM. During the *DuBay* hearing, appellant indicated he had a conversation with MAJ GC about calling CPT DM as a presentencing witness. Major GC indicated that if CPT DM was called as a witness, he would be cross-examined on mental health issues and his personal history would be revealed. Appellant testified that was not something he was willing to have "out in the open." Appellant indicated that presenting mental health information during the presentencing case was not part of the defense trial strategy as he understood it. Major GC as well as appellant seemed to indicate that introducing mental health concerns would have been potentially inconsistent with a good soldier sentencing case.

---

(. . . continued)
with a Military Family Life Coach (MFLC) post deployment for depression—but there were no official records because appellant stopped seeing the MFLC before it would become an official entry in his files.

[2] The actual list was not able to be produced at the *DuBay* hearing.

Appellant testified that MAJ SP's name was also on the proposed witness list. Major SP was a former Army judge advocate who became a chaplain. Appellant began seeing MAJ SP during the court-martial process, after experiencing anxiety due to the court-martial and after indicating suicidal thoughts in a unit survey. Major GC testified that he spoke to MAJ SP at least once, but not in great depth. He also indicated that appellant passed along MAJ SP's idea to him on how to proceed in appellant's defense. Major GC testified he did not want to call MAJ SP as a witness because: 1) he had concerns about MAJ SP's demeanor; 2) he had concerns about the substance of his testimony, in that MAJ SP would tend to indicate appellant developed a moral compass in the aftermath of the offense; and 3) any testimony regarding a change in appellant's faith or transformation should come from appellant. Major GC thought MAJ SP's testimony would somehow undercut the strength of appellant's testimony regarding his transformation.

Appellant testified that Ms. CK, appellant's girlfriend, was on the witness list and she was never interviewed. Appellant asserts Ms. CK could have testified to appellant's remorse, character, new found faith and his behavioral health issues.

*Guilty Plea*

After his offer to resign was rejected, appellant choose to plead guilty to fraud against the United States—without a pretrial agreement or a stipulation of fact. The government offered no evidence during presentencing.

Appellant provided a sworn statement at presentencing. This unusual occurrence was consistent with the defense strategy of accepting responsibility for his actions and being remorseful. During appellant's sworn statement, he indicated he "sought out mental health treatment" and counseling from chaplains. He was able to present testimony about his "new found Christian faith." Additionally, the defense called appellant's brother, three senior military officers, and a senior non-commissioned officer to talk about various aspects of appellant, including personal observations, excellent duty performance and rehabilitative potential.

*Post-Trial Matters*

Defense counsel first learned of appellant's claim of serious mental health issues when appellant disclosed them in his clemency matters to the general court martial convening authority (CA). After his court-martial, when coordinating his Rule for Courts-Martial [hereinafter R.C.M.] 1105 submission with defense counsel, appellant drafted a letter of apology in which it became apparent that his depression had been more serious than he previously revealed to defense counsel. In his letter, appellant informed the CA that he was depressed and suicidal and an emotional wreck in the months prior to committing the offense. He also asserted he had been living with suicidal ideations for the majority of his adult life and never sought

professional assistance—but with help from Behavioral Health and the chaplain, was now on a better path and was healing from his past depression. Appellant confirms he did not tell his defense counsel about his history or everything he was going through. Based on this new mental health information, MAJ GC requested a letter from MAJ SP for inclusion is appellant's post-trial matters.

Appellant personally met with the CA prior to the CA taking action on appellant's post-trial submission. During this meeting, he was able to personally present his mental health issues as clemency. Ultimately, the information did not prove persuasive as the CA did not provide appellant with post-trial relief.

## LAW AND DISCUSSION

Appellant now claims his Sixth Amendment right to effective assistance of counsel was denied when defense counsel failed to identify and investigate potential mitigation evidence. Specifically, appellant alleges his defense counsel: 1) failed to recognize and use appellant's mental health related issues as possible sentencing evidence; and 2) failed to interview witnesses regarding appellant's duty performance, acceptance of responsibility, and rehabilitation potential.

"Claims of ineffective assistance of counsel are reviewed de novo." *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (internal citations omitted).

In evaluating allegations of ineffective assistance of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court found that the Sixth Amendment entitles criminal defendants to the "effective assistance of counsel"—that is, representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland*, 466 U.S. at 686. Inquiry into an attorney's representation must be "highly deferential" to the attorney's performance and employ "a strong presumption" that counsel's conduct falls within the wide range of professionally competent assistance. *Id.* at 688-89. Our superior court has applied this standard to military courts-martial, noting that to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate: 1) that his counsel's performance was deficient; and 2) that this deficiency resulted in prejudice. *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)).

We judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690. In making that determination, we consider the totality of the circumstances, bearing in mind "counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work . . . [and] recognize that counsel is

6

strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

*Counsels' Performance During Presentencing*

Before trial, appellant told his defense counsel he was struggling with depression and feeling anxiety. Appellant also told his counsel he was "seeing behavioral health" and receiving spiritual counseling from a military chaplain. Appellant was not, however, forthcoming before his court-martial to his defense counsel with the depth or nature of his mental health issues and history. Nor did he reveal the struggles he shared with mental health providers and his chaplain. Appellant now criticizes his defense counsel for not independently discovering the depth and breadth of his mental issues and history. Based on the record before us, we do not find defense counsel's performance deficient.

We find defense counsel was unaware of appellant's past suicidal ideations and appellant's mental state until reviewing the draft of appellant's apology to be included in the R.C.M. 1105 submission. Defense counsel indicated that before trial, he reviewed the physical, medical, and mental records submitted as part of appellant's resignation packet, and spoke with appellant's supervising officers, subordinates, and brother. None of these records or conversations hinted at appellant's mental state. Appellant's own testimony indicates he kept his depression and mental health struggles hidden from both his family and his chain of command. Based on what he knew at the time, we do not find it unreasonable that defense counsel believed appellant sought mental health assistance due to stress related to the court-martial process and did not inquire further.[3]

In preparation for trial, appellant and his defense counsel discussed potential evidence for the presentencing stage of the court-martial. Appellant did not disclose his mental health issues to his defense counsel. Accordingly, defense counsel and client discussed and agreed to presentencing evidence of acceptance of responsibility, good military performance, remorse, and strong rehabilitative potential. Based on the small amount of information he possessed, MAJ GC assessed mental health evidence would not be helpful or consistent with the theme of the presentencing. Regarding MAJ SP, counsel articulated sound reasons for not calling him as a sentencing witness. The decision not to call the chaplain to testify was one of a strategic or tactical nature. *United States v. Paxton*, 64 M.J. 484, 489-90 (C.A.A.F. 2007). It is well-established that, "[a]s a general matter, we will not second-guess" decisions of that type by defense counsel. *Mazza*, 67 M.J. at 475 (citations and internal quotation marks omitted). We are satisfied that trial defense

---

[3] This assumption was not unreasonable. Captain DM indicated that appellant's depression was due in part to the ongoing legal process and pending court-martial.

counsel made a "reasoned tactical decision" regarding both CPT DM and MAJ SP. *United States v. Weathersby*, 48 M.J. 668, 673 (Army Ct. Crim. App. 1998). We also find that while Ms. CK's testimony may have been somewhat informative, appellant was able to personally testify about his remorse, new found faith and mental health issues.

Based on the foregoing, we find defense counsel was not ineffective in his preparation for, and presentation of, appellant's sentencing case. In fact, defense counsels' strategy was successful in that they achieved the goal they set in appellant's case. Initially appellant wanted to be retained in the Army but the defense strategy changed to avoiding confinement after appellant had a pending employment offer and was involved in a blossoming romantic relationship.

Even assuming deficiency, appellant has not met his burden of establishing prejudice: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 468 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Importantly, CPT DM did not indicate there was any causal connection between appellant's diagnosis and his alleged misconduct. Captain DM's diagnosis did not impact the voluntariness of appellant's guilty plea. Additionally, appellant testified to his own spiritual awakening and remorse. The absence of MAJ SP's and CPT DM's testimony does not present a reasonable probability of a different result. Despite defense counsel's assertion that he would have approached appellant's case differently had he known about appellant's mental health issues, we are convinced the result would have been the same even if defense counsel had investigated appellant's mental health issues further and called additional witnesses including CPT DM, MAJ SP, and Ms. CK.

Based on the foregoing, appellant's claim of ineffective assistance of counsel therefore fails.

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Judge PENLAND and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

8