# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

CAMPANELLA, SALUSSOLIA, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant First Class JEFFERY A. SINCLAIR**
**United States Army, Appellant**

ARMY 20160267

Headquarters, 21st Theater Sustainment Command
Christopher D. Carrier, Military Judge
Colonel Paula I. Schasberger, Staff Judge Advocate

For Appellant: Captain Timothy G. Burroughs, JA (argued); Colonel Mary J. Bradley, JA; Major Patrick J. Scudieri, JA; Captain Timothy G. Burroughs, JA (on brief); Colonel Mary J. Bradley, JA; Major Julie L. Borchers, JA; Captain Timothy G. Burroughs, JA (on reply brief).

For Appellee: Captain Meredith M. Picard, JA (argued); Lieutenant Colonel Eric K. Stafford, JA; Major Michael E. Korte, JA; Captain Meredith M. Picard, JA (on brief).

30 March 2018

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

In this case, we do not find appellant's defense counsel were deficient. Even assuming they were deficient, appellant does not establish that, but for his counsel's errors, the findings or sentence would have been different.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of possessing and using steroids in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2012), and, contrary to his pleas, of three specifications of assault consummated by a battery, in violation of Article 128, UCMJ. The convening authority approved the adjudged sentence of a bad-conduct discharge and confinement for eight months.

SINCLAIR—ARMY 20160267

This case is before us for review pursuant to Article 66, UCMJ.[1] Appellant asserts three assigned errors;[2] two of which merit discussion but no relief.

## BACKGROUND

Appellant was convicted of committing three assaults consummated by a battery against his spouse, MS, by: 1) striking her in the throat on divers occassions from on or about 5 January 2011 to 31 May 2012; 2) pushing her on the steps of a second floor stairwell in June 2014; and 3) grabbing her neck and shaking her head on 17 May 2015.

Appellant and MS married in November 2010. The marriage was marked with periods of separation—due to miltiary duties or martial strife—and periods of reconcilation. The 17 May 2015 assault ended any attempts at reconcilation and led to divorce and child custody proceedings.

As to the first assault, MS testified appellant jabbed her in the throat while driving in Fayetteville, North Carolina and in a public location near Colorado Springs, Colorado. As to the Colorado incident, MS testified that a bystander called law enforcement to report a mugging and an a attack. Both appellant and MS, when questioned by law enforcement a few minutes later, denied an asssault occurred. A stipulation of fact was admitted at trial stating that no law enforcement record of the incident existed. MS and appellant were the only witnesses to testify about the incident. Appellant testified an assault did not occur and reasoned that a bystander must have called law enforcement because appellant was walking with MS's purse, which she had forgotten on a bench.

The only eye-witnesses to the second and third assaults, which occurred in Germany, were MS, appellant, and their infant children. Again, MS and appellant's testimony differed. Appellant testified the second assault did not occur and he merely grabbed MS's purse to get her attention as she was standing near the steps of a stairwell.

As to the third assault, appellant testified MS had slapped him in the face and he grabbed her neck to defend himself and to protect his young daughter who was in MS's arms. Other than a neighbor, who testified to observing appellant and MS shortly after the third assault and took photographs of MS's neck injuries, there were no eye-witnesses or physical evidence corroborating any of MS's assault allegations.

---

[1] This court heard oral argument in this case on 14 March 2018.

[2] Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant raises the same errors.

2

Given the case was based primarily on testimony from MS and appellant, the defense strategy centered on attacking MS's credibility and motives. Defense counsel pursued several theories to discredit MS during their presentation of evidence and their cross-examination of her and other government witnesses.

Appellant's character was also challenged and the following uncharged misconduct was admitted: 1) beginning immediately after the marriage, appellant began to physically abuse MS by manipulating her wrist; 2) appellant jabbed MS in the throat on dates prior to the first charged assault; 3) appellant engaged in an adulterous relationship; and 4) appellant had used and possessed steroids for approximately three years prior to the dates to which appellant pleaded guilty to steroid use and possession.

During the presentencing phase, appellant provided a short unsworn statement and defense counsel admitted a sixty-six page "Good Soldier Book" containing eleven character "letters of support," his evaluations and awards, photographs, and his enlisted record brief.

## LAW AND ANALYSIS

### A. *Standard of Review*

Claims of ineffective assistance of counsel are reviewed de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011).

### B. *Ineffective Assistance of Counsel*

To establish ineffective assistance of counsel, appellant "bears the heavy burden of meeting both prongs of a two-part test: that the performance of his counsel was deficient and that he was prejudiced thereby." *United States v. Weathersby*, 48 M.J. 668, 670 (Army Ct. Crim. App. 1998) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)); *see also United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987). The standard set forth in *Strickland* requires appellant to demonstrate: 1) that counsel's performance was deficient; and 2) that this deficiency resulted in prejudice. 466 U.S. at 687. Appellant must show counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id*. The relevant issue is whether counsel's conduct failed to meet an "objective standard of reasonableness" such that it fell outside the "wide range of professionally competent assistance." *Id*. at 688, 690.

On appellate review, there is a strong presumption that counsel was competent. Thus, appellant "must rebut the presumption by pointing out specific errors made by his defense counsel which were unreasonable under prevailing professional norms." *Weathersby*, 48 M.J. at 670 (citing *United States v. Cronic*,

466 U.S. 648 (1984)); *see also United States v. Grigoruk*, 56 M.J. 304, 306-07 (C.A.A.F. 2002) (citing *Strickland*, 466 U.S. at 689).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91.

To establish prejudice and meet the second prong, appellant must show "counsel's errors were so serious as to deprive the accused of a fair trial, a trial whose result is reliable." *Weathersby*, 48 M.J. at 670 (citing *Strickland*, 466 U.S. at 687). This requires appellant to show that the errors had more than "some conceivable effect" on the proceedings, but appellant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.

Appellant claims his defense counsel were ineffective in three ways: 1) failing to fully attack MS's credibility and motives; 2) failing to object to inadmissible testimony and argument; and 3) failing to present an adequate presentencing case. We disagree and address each allegation in turn.

### 1. Attacking MS's Credibility and Motives

Appellant asserts his counsel were deficient in attacking MS's credibility in four areas by failing to offer: 1) three hundred and twelve pages of Skype messages between MS and appellant over an approximate nine month period where MS omits discussion of being assaulted by appellant; 2) evidence that MS lied in a family court proceeding; 3) Sergeant First Class (SFC) Downen's opinion that MS possessed an untruthful character; and 4) a witness who would testify she heard MS state "all you have to do is hold something against your husband and you'll get your way."

### a. Skype Messages

Appellant's assertion that defense counsel were deficient by failing to admit three hundred and twelve pages of Skype messages, collected by appellant as opposed to law enforcement, is unpersuasive. First, defense did admit an exhibit with pertinent Skype pages to attack MS's credibility. Second, even if we were to assume appellant provided a complete record of the Skype messages between himself and MS, defense counsels' affidavits provide compelling strategic reasons for not seeking their admittance.

4

Defense counsel states:

> [T]he cost of admitting the entire string of messages was prohibitive because of uncharged misconduct contained in the string of messages. . . . The inference of fabrication that would arise from the charged allegations' absence in the [Skype records] really added little to the other available impeachment. On the other hand, the cost would have been admission of a lot of uncharged misconduct and some proof of obstruction.[3]

Having reviewed the Skype messages, we find defense counsels' strategic conclusion that the three hundred and twelve pages of Skype messages were, at best, of minimal probative value and, at worst, detrimental was not unreasonable.

### b. Family Court Testimony

Appellant asserts defense counsel failed to offer evidence that MS lied in a United States court regarding whether she maintained an active protective order against appellant in Germany. Defense counsel did attempt to obtain a copy of MS's family court testimony but was advised by appellant's family court civilian attorney that there was no transcript or recording of MS's testimony. In the abscene of a transcript or recording, defense counsel made a strategic decision to not cross-examine MS on this issue because she could have denied such an allegation or even provided an unfavorable response that defense counsel could not have rebutted.

Even if defense counsel was able to admit extrinsic evidence on this issue by calling a witness, such as appellant's civilian attorney, to potentially impeach MS, such testimony "would have diminished probative value because of the vagaries of memory and the difficulties of translation" regarding MS's ability to understand and interact with the German judicial system. Defense counsel reasoned the probative value of this evidence was low and the risk of an unfavorable response from MS existed. We conclude defense counsel's strategic decision to not present this evidence was not deficient.

---

[3] The uncharged misconduct or unfavorable evidence included appellant maintaining unit funds in a questionable manner, discussions and/or potential admissions of adultery by appellant, appellant trying to reach a quid pro quo agreement with MS that he would drop allegations against her if she dropped allegations against him, and MS constantly alluding to appellant mistreating and being awful to her. At trial, appellant was charged with an obstruction of justice specification but was ultimately found not guilty of the offense.

*c.  SFC Downen's Testimony*

We find no merit to the assertion that defense counsel were deficient in failing to offer SFC Downen's opinion that MS possessed an untruthful character.

Sergeant First Class Downen grew up with appellant and was his good friend. It became clear through the course of SFC Downen's testimony that he was a difficult witness to control and biased in favor of appellant.  The below excerpt from defense counsel's affidavit provides an overview of the interactions with SFC Downen:

> [SFC Downen] wanted to talk about specific instances of when he felt [MS] had lied to him.  I had to stop our discussions multiple times to go over the rules of evidence with him and explain what he could and could not testify to.  During his trial testimony, SFC Downen was a very difficult witness to control.  He talked [over] Government objections and repeatedly tried to delve into topics prohibited by the rules of evidence.  As he did so, he began to appear like less of an unbiased observer and more like [an appellant] partisan. . . . In addition, SFC Downen knew the details of appellant's uncharged misconduct.  I worried that SFC Downen's inability to stay within the confines of permissible testimony would open the door to the Government introducing evidence on those topics. Given the circumstances of his testimony, . . . and the fact we had two other witnesses who could testify to [MS's] truthfulness, I decided to end my direct of SFC Downen.

During the defense's direct and re-direct examination, SFC Downen testified, in the absence of objection from government counsel, to specific instances he believed MS had lied in contravention of Military Rule of Evidence (Mil. R. Evid.) 608(b).[4]  His testimony, although not expressly stated, created the distinct impression he believed MS possessed a character for untruthfulness.  The following trial discussion between defense counsel and SFC Downen is illustrative:

> [Defense Counsel]:  And during that time that you knew [MS], you just testified that the one lie that you recollect her telling you was that she exaggerated about how much

---

[4] Mil. R. Evid. 608(b) states during direct examination "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."

> money she had and that she later wrote you an email that she was ashamed of that exaggeration.  Is that correct?
>
> [SFC Downen]:  That is not correct.  I did not say the one lie she told me, or that I'm aware of.  I counted that lie, because I felt that's what I was asked of significance, but that is not the only lie that I'm aware of.

This illustration, combined with our review of the entire record, supports the assertion in defense counsels' affidavits that SFC Downen was a "wild card" witness.

Defense counsel's strategic decision to not specifically elicit such testimony was not deficient because:  1) SFC Downen's testimony, in contravention of Mil. R. Evid. 608(b), discussed specific instances of MS's untruthfulness and created the distinct impression and desired effect that she possessed a character for untruthfulness; 2) it protected against the risk that his continued testimony would open the door to government cross-examination on appellant's uncharged misconduct; and 3) defense counsel successfully admitted testimony from two other witnesses that MS possessed a character for untruthfulness.

### d.  Hearsay Statement by MS

Lastly as to MS's credibility, appellant asserts his counsel failed to call a witness who would testify that "[d]uring a meeting of military spouses, [the witness] heard [MS] tell other wives words to the effect of 'all you have to do is hold something against your husband and you'll get your way.'"  Defense counsel considered offering this information but did not for the following reason:

> [T]here would be no net gain to my client.  Whether I asked MS about it on cross-examination or called [the witness] . . . there was little to [be] gained from the answer, even if MS admitted making the statement.  [The witness] had no context about [MS's] comment and did not know [MS].  MS may have denied saying it, claimed it was a joke, or had some other innocent explanation. Without some way to relate the comment to the case, the comment was just a distraction that could cost us credibility with the judge.  Because we had so much other evidence of bias and motive to fabricate, we did not need to risk our credibility.

The court accepts defense counsel's explanation as a reasonable strategic decision and finds they were not deficient in failing to offer this evidence.

### 2. *Objecting to Inadmissible Testimony and Argument*

Appellant asserts his counsel were deficient by failing to object to the government presenting the following inadmissible testimony: 1) MS testifying to uncharged misconduct that appellant physically abused her before the dates of the charged offenses; and 2) MS describing the assault in Colorado as a "mugging or attack." Appellant asserts his counsel were deficient by failing to object to trial counsel's closing argument: 1) improperly using appellant's "plea of guilty or [providence] statements" regarding his steroid use; and 2) inappropriately insinuating appellant was a violent person because of his steroid usage and he possessed a propensity to assault MS.

### a. *Inadmissible Testimony*

Defense counsel concedes the government may have gotten "away with a small amount of improper testimony" by MS regarding uncharged misconduct but it was "very limited." We agree. MS testified to several charged acts of assault by appellant. Appellant testified those assaults did not occur. This case squarely centered on whether the military judge, as finder-of-fact, believed MS or appellant. Under this backdrop and MS's testimony to multiple charged assaults, the admission of limited uncharged misconduct provided little, if any, probative evidence enhancing MS's credibility, decreasing appellant's credibility, or enhancing a propensity argument that appellant assaulted MS. Even if defense counsel were deficient by not objecting to MS's testimony, appellant has failed to meet his burden that the admission of such testimony was so serious as to deprive appellant of a fair trial.

As to MS's description of the Colorado assault as a "mugging or attack," the defense counsel provided a reasonable strategic reason for not objecting. Defense counsel theorized her description of the assault as a "mugging or attack" did not make sense because no law enforcement report existed so her exaggeration of the incident was evidence of her deception as to its occurrence.

### b. *Impermissible Argument*

We find trial counsel's argument was not an impermissible use of appellant's "plea of guilty or [providence] statements." During the contested trial, MS testified to appellant's steroid use and possession and the government admitted the enclosures from appellant's guilty plea stipulation of fact that documented his steroid use and possession.

Appellant specifically agreed in his pretrial agreement that he would not "object to the stipulation's admission during the providence inquiry, on the merits, or during the pre-sentencing phase." In the stipulation of fact, appellant agreed to

the admissibility of the stipulation's enclosures.  During the contested trial, the military judge addressed the admissibility of the enclosures with the parties as follows:

> [Military Judge]:  So, the parties have agreed then that these [stipulation of fact enclosures] are admissible.  I can consider these as substantive evidence, right?
>
> [Defense Counsel]:  Yes, Your Honor.  It was our understanding that it was part of the agreement.

The evidence was properly admitted during the contested trial.  Appellant failed to establish any of his providence inquiry statements were used by the trial counsel during their findings' closing argument.

As to the trial counsel insinuating appellant was violent or possessed a propensity to assault MS because of his steroid use, defense counsel presented two witnesses who gave their opinions that appellant possessed a character for peacefulness.  Appellant testified he was acting in self-defense to protect himself and/or his daughter on 17 May 2015 and he used only the force necessary to repel MS's aggression.  Defense presented witness testimony that appellant's face was red on 17 May 2015 after the assault in an attempt to corroborate appellant's assertion that MS had slapped him.  Therefore, trial counsel's argument regarding appellant's steroid use was a fair response to rebut defense's evidence of self-defense, reasonable force, and appellant's possession of a character for peacefulness.

### 3.  Defense Counsels' Efforts During the Findings Phase

Even assuming defense counsel were deficient during the findings phase, appellant has failed to establish that any alleged error, or combination of alleged errors, deprived appellant of a fair trial.  A review of defense counsels' efforts during the findings phase demonstrates appellant's trial was fair.

The defense counsel vigorously attacked MS's credibility and motives in several areas, to include:  1) she was seeking revenge against appellant because she believed he had been in an adulterous affair; 2) she was attempting to better her position for divorce and child custody proceedings; 3) she was deflecting against appellant's allegations and a possible prosecution by German law enforcement for allegedly stealing funds from appellant's private bank account after the third assault; 4) she was deflecting against appellant's allegations and a possible prosecution by German law enforcement that she assaulted appellant and/or endangered her daughter on 17 May 2015; 5) she was concerned she would lose custody of her children if prosecuted for either of appellant's allegations; and 6) she was trying to force appellant's chain of command to expedite the paperwork to pay for her and her

childrens' departure from Germany, which would deprive appellant of his visitation rights.

Beyond these credibility and motive attacks, among others, the defense focused on the lack of witness testimony and physical evidence corroborating MS's claims as to the first and second assaults. As to the third assault, defense attempted to minimalize the severity of MS's neck injuries through the cross-examination of her and other witnesses. Appellant testified MS slapped him in the face and he used self-defense and reasonable force during the 17 May 2015 incident. Defense counsel attempted to corroborate appellant's assertions by providing additional witness testimony that appellant's face was red because MS slapped him on 17 May 2015.

The military judge admitted a sworn statement MS made to miltiary police in July 2015 in which she wrote "I feel this situation has spread unnecessarily out of control and again, I will not be pressing any charges against [appellant.]" Defense asserted this statement was a full "recantation" by MS and her admittance that she had lied about the assaults.

Additionally, defense called two witnesses who testified MS possessed a character for untruthfulness and SFC Downen discussed specific instances where he believed MS had lied to him. Defense called witnesses who testified appellant possessed a character for peacefulness and truthfulness.

### 4. The Presentencing Phase

Appellant asserts his counsel were deficient by: 1) admitting only a sixty-six page "Good Soldier Book"[5] and appellant's brief unsworn statement; 2) failing to present testimony from his family members; and 3) failing to present evidence of combat injuries impacting his medical or mental health.

### a. Good Soldier Book and Unsworn Statement

In the pretrial agreement, appellant "voluntarily waive[d] [his] right to request the personal appearance of any witness at the time of sentencing not located in Stuttgart, [Germany]." The issue is whether defense counsels' decision to submit eleven character "letters of support," as opposed to offering telephonic witness testimony, was reasonably sound.

Defense counsels' affidavits discuss their decision to submit eleven character letters as tactically sound "because the witness[es] would avoid cross-examination" and from past experience they knew that particular military judge "gave equal

---

[5] The "Good Soldier Book" contained eleven character "letters of support," appellant's evaluations and awards, photographs, and his enlisted record brief.

weight to both live testimony and written statements." We agree their actions were not unreasonable under prevailing professional norms. As aptly stated in government's brief, the eleven character letters provided a "detailed account of the best aspects of appellant's career as well as his personal attributes, qualities and rehabilitative potential" from "a variety of people who knew appellant personally and professionally—supervisor, subordinates, and peers." (Gov't Br. at 45). This case is, therefore, distinguishable from *United States v. Eaton*, 2015 CCA LEXIS 206, *7-12 (Army Ct. Crim. App. 13 May 2015) (mem. op.) where defense counsel erred by presenting a "good soldier book" devoid of any written character statements.

As to the brevity of the unsworn statement, defense counsel states "once the verdict was read, [appellant] became irate and told us he did not want to put on . . . an unsworn statement. . . . [Appellant] refused to give the unsworn statement we had previously prepared with him, but instead wrote the short statement which he gave during the sentencing case." Both defense counsel, the senior defense counsel, and the regional defense counsel advised appellant to read the previously prepared unsworn statement but appellant "refused to read it" . . . [and] he only said a few menial sentences." Based on counsel's preparation and advice, and appellant's apparent disregard of this assistance, we find counsel were not deficient based on the brevity of the unsworn statement.

### b. Appellant's Family Testimony

Appellant asserts defense counsel should have called his family members to testify during the presentencing phase. Beyond his own affidavit, appellant did not provide an affidavit from any of his family members. Appellant's affidavit is a mere proffer as to the likely substance of his family members' testimony. Even if we were to adopt appellant's proffer regarding his family members' testimony, he failed to establish such information would have altered his sentence.

### c. Appellant's Medical and Mental Health History

An appellant's medical and mental health history can be critical evidence during the presentencing phase. Based on its potential importance, we ordered defense counsel to submit additional affidavits as to their investigative efforts and strategic decisions regarding appellant's medical and mental health history.

Defense counsels' affidavits contain their investigative efforts and tactical reasoning. First, defense counsel discussed with appellant whether he had any medical or mental health issues. Defense counsel obtained an index of appellant's medical records. Although appellant sought treatment for "TBI, PTSD, [and] mental health" conditions, his records revealed "he was not clinically diagnosed with a mental or physical disability due to his service." Defense counsel spoke with

11

appellant's psychologist and confirmed appellant was not diagnosed with any mental health issues. Further, defense counsel admitted appellant's medical record index as substantive evidence for the military judge to consider but did not assert any of appellant's medical or mental health conditions were combat related. (App. Ex. VII).

Based on a lack of clinical diagnosis as to any medical or mental health disability being connected to appellant's combat service, defense counsel reasoned presenting such evidence could have hurt appellant. Defense counsel stated he had "seen other cases where the Accused raised PTSD and/or TBI without a strong evidentiary basis backfire[] because the factfinder felt the accused was using it as an excuse." Based on defense counsels' investigative efforts and their strategic evaluation of the probative value of offering appellant's medical and mental health conditions as combat related, we find their conduct regarding presentation of medical evidence not unreasonable.

Even assuming defense counsel were deficient during the presentencing phase, appellant has not met his burden to show that any difference in the presentencing case would have led to a more favorable outcome. *See United States v. Akbar*, 74 M.J. 364, 384 (C.A.A.F. 2015).

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge CAMPANELLA and Judge SALUSSOLIA concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court