# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E1 VICTOR D. WILSON**
**United States Army, Appellant**

ARMY 20160342

Headquarters, Fort Leavenworth
Charles L. Pritchard, Jr., Military Judge
Colonel Craig E. Merutka, Staff Judge Advocate

For Appellant:  Captain Zachary A. Gray, JA (argued); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Patrick J. Scudieri, JA (on brief); Lieutenant Colonel Tiffany M. Chapman, JA; Major Todd W. Simpson, JA; Captain Zachary A. Gray, JA (on brief and reply brief in response to specified issues)

For Appellee:  Captain Jonathan S. Reiner, JA (argued); Lieutenant Colonel Eric K. Stafford, JA; Major Michael A. Korte, JA (on brief); Lieutenant Colonel Eric K. Stafford, JA; Major Michael A. Korte, JA; Captain Jonathan S. Reiner, JA (on brief in response to specified issues).

22 June 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SCHASBERGER, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of assault consummated by a battery upon a child under the age of sixteen and one specification of committing an indecent act upon a child under the age of sixteen in violation of Articles 128 and 134 Uniform Code of Military Justice, 10 U.S.C. §§ 928, 934 (2006) [UCMJ].  The convening authority approved the adjudged sentence of a dishonorable discharge and confinement for eight years.

This case is before us for review under Article 66, UCMJ. Appellant assigns four errors through counsel[1] and personally asserts multiple additional errors pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). One of the assigned errors and several of the personally asserted errors[2] involve allegations of ineffective assistance of counsel. In order to ensure we properly understood appellant's full ineffective assistance of counsel claim, we invited appellant to expand on his original allegations of error. After a review of the record, including supplemental briefs, oral argument, and affidavits from the trial defense counsel, we find the decisions of the trial defense counsel reasonable and affirm the findings and sentence.

## BACKGROUND

In the summer of 2007, YH-J was eight years old and lived with her family on Fort Polk, Louisiana. Her neighbor and sometimes babysitter was appellant's wife, KW. Appellant, appellant's wife, and YH-J's parents, Staff Sergeant (SSG) B and KB, were all friends and frequently spent time together. The families remained friends in the years after both families moved from Fort Polk.

YH-J's stepfather, SSG B, had various ailments, which culminated in several trips to the hospital in the summer of 2007. One such trip happened on 8 June 2007, and another occurred in July 2007. On one occasion that summer, SSG B went by ambulance to the hospital. That night, KB brought YH-J and her four-year-old sister over to appellant's house. YH-J did not want to stay at appellant's house and

---

[1] Appellant's first three assignments of error all involve the government's expert witness, which we address in our opinion and footnote 4, *infra*. Appellant's fourth assignment of error claims the military judge erred by failing to merge the Specification of Charge I and Specification 2 of Charge II as an unreasonable multiplication of charges. On the facts of this case, we do not find an unreasonable multiplication of charges in the government charging appellant with an assault on a child under the age of sixteen and then committing a lewd act on a the same child. "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts-Martial 307(c)(4). We considered the five factors set out in the *United States v. Quiroz*, and conclude there was not an unreasonable multiplication of charges. 55 M.J. 334, 338-39 (C.A.A.F. 2001).

[2] We reviewed the remaining *Grostefon* matters and find they are without merit.

begged her mother not to leave her. Her mother did not know why YH-J was making a fuss and left her at appellant's house.[3]

YH-J testified she and her sister slept on a blow-up mattress in appellant's dining room. That night appellant grabbed YH-J by the arm and led her to the living room. While in the living room he sat her down on the couch, stuck his hand down her pants and digitally penetrated her vagina. YH-J did not tell anyone about the assault.

In 2012, YH-J's family went to visit appellant's family while on a vacation in Orlando, Florida. When they arrived at appellant's house, YH-J did not want to go inside. With no context for YH-J's behavior, KB told her to stop being rude and made her go into the house. The following year, YH-J again refused to get out of the car at appellant's house; this time because YH-J's grandparents were in the car, YH-J was allowed to remain in the car.

In 2014, when YH-J was fifteen years old, she told her mother about appellant assaulting her. YH-J's account resonated with KB as it put into perspective YH-J's previous behavior that KB witnessed. KB remembered the one time she had dropped YH-J and her sister to stay at appellant's but did not remember the exact date. KB looked at SSG B's medical records and determined that the date was 8 June 2007. KB reported YH-J's allegations to the police.

At trial, everyone agreed that YH-J and her sister spent the night at appellant's house when SSG B went to the hospital in an ambulance. YH-J had no recollection of the exact date, but had some idea of the time of year and her own age at the time. There was some inconsistency in the testimony as to whether the ambulance trip occurred when SSG B had surgery or a bile obstruction. The obstruction occurred on 8 June 2007 and the stomach surgery occurred on 23 July 2007. Neither government nor defense introduced SSG B's medical records at trial.

The defense theory at trial was that appellant could not have committed the assault during the time alleged because he was generally never around due to his

---

[3] Specification 1 of Charge II alleged appellant, on a previous occasion, committed an indecent act on YH-J by placing his penis on her buttocks. YH-J testified that she went to appellant's house to use the swimming pool. Appellant entered the room where she was changing into her bathing suit, had her face the corner and rubbed his penis on her buttocks. At trial YH-J was vague when this occurred and, while she testified appellant committed this act, she felt but did not see appellant's penis. The defense theory was the pool had been destroyed before the alleged time period and there was no evidence appellant touched YH-J with his penis. The military judge found appellant not guilty of this specification.

work and field exercises, and specifically not around on 8 June 2007. Defense counsel attempted to introduce evidence to show that appellant was rarely home, and when he was home there were a lot of other people around. The second part of the defense strategy focused on impeaching YH-J, pointing out inconsistencies in previous statements and the holes in her memories. Defense also got the government expert, Dr. Kennedy, to agree that just because YH-J suffered trauma it did not mean the trauma was caused by appellant.

The key witness for the defense was the appellant's wife, KW. KW testified that appellant was at basic noncommissioned officer's course (BNCOC) and not at the house on 8 June 2007. She also testified that YH-J and her sister did not sleep downstairs at appellant's house, but instead slept upstairs in a bedroom, and that there was no way an assault could have happened as she is a very light sleeper and would have heard any noise from downstairs. KW was impeached on cross-examination on several grounds, including her telephone discussions with appellant, at a time he was incarcerated for a different offense, about the contents of KW's testimony at trial.

In rebuttal, the government introduced evidence that BNCOC was not a residential course during that general time frame at Fort Polk.

## LAW AND DISCUSSION

To establish an ineffective assistance of counsel claim, which we review de novo, an appellant must show: "his counsel's performance fell below an objective standard of reasonableness; <u>and</u> [] the counsel's deficient performance gives rise to a 'reasonable probability' that the result of the proceeding would have been different without counsel's unprofessional errors." *United States v. Akbar*, 74 M.J. 364, 371 (C.A.A.F. 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

When we evaluate the first *Strickland* prong, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Appellant has the burden to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter,* 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

As to our evaluation of the prejudice prong of the *Strickland* test, we must determine "whether, absent counsel's errors, there is a reasonable probability the factfinder would have had a reasonable doubt as to appellant's guilt." *Strickland*, 466 U.S. at 695. A reasonable probability "is a probability sufficient to undermine the confidence in the outcome." *Id*. at 694. Merely demonstrating error is not sufficient; appellant must show that the defense counsel's errors were so "serious as to deprive the defendant of a fair trial whose result is reliable." *Id*. at 687.

4

On appellate review, there is a strong presumption that counsel was competent. Thus, appellant "must rebut the presumption by pointing out specific errors made by his defense counsel which were unreasonable under prevailing professional norms." *United States v. Weathersby*, 48 M.J. 668, 670 (Army Ct. Crim. App. 1998)(citing *United States v. Cronic*, 466 U.S. 648 (1984)); *see also United States v. Grigoruk*, 56 M.J. 304, 306-07 (C.A.A.F. 2002)(citing *Strickland*, 466 U.S. at 689).

Appellant claims his counsel were ineffective in three ways: 1) failing to object to Dr. Kennedy's inadmissible testimony; 2) failing to introduce SSG B's medical records; and 3) failing to present publically available information about BNCOC. We disagree and address each allegation in turn.

### A. Dr. Kennedy's Testimony[4]

Appellant's assertion that defense counsel were deficient by failing to object to Dr. Kennedy's testimony is unpersuasive. First, Dr. Kennedy's testimony was within the scope of her expertise. Second, given a judge-alone trial, defense counsel's tactical decision not to object to Dr. Kennedy's testimony was reasonable.

The government qualified Dr. Kennedy as an expert in the fields of forensic child psychology and neuropsychology. During the course of her testimony she discussed general concepts based on her expertise and specific behaviors she

---

[4] In his assigned errors, appellant argued the military judge erred by allowing the government's expert witness, Dr. Kennedy, to act as a human lie detector and that the military judge abandoned his gatekeeper role by allowing unscientific testimony. We disagree. Doctor Kennedy made clear that she was not testifying as to whether the victim was telling the truth. Insofar as her testimony could be interpreted as a comment on the victim's believability, the military judge stated that "the court notes that it does not consider Dr. Kennedy's testimony about [YH-J's] memories to mean that the memories reflect actual events and are therefore true. Dr. Kennedy cannot see into [YH-J's] past."

In this judge-alone case, we find that the military judge's statement to be akin to the curative instructions we expect from a military judge when there is a panel. The defense cites *United States v. Jackson* for the proposition that this curative statement is not enough. 74 M.J. 710, 714 (Army Ct. Crim. App. 2015). We find the rationale of our superior court in *United States v. Robbins* as more on point and persuasive, especially given the military judge's disclaimer. 52 M.J. 455, 457 ("A military judge is presumed to know the law and apply it correctly, is presumed capable of filtering out inadmissible evidence, and is presumed not to have relied on such evidence on the question of guilt or innocence.").

witnessed from six meetings with YH-J and observing YH-J in court. She discussed the formation of memories and how the brain encodes them. Finally, she testified as to various reasons why children might delay reporting an event. Though Dr. Kennedy used the phrase "autobiographical memory" and pointed to YH-J using phrases such as "I felt", "I heard, I saw, I felt inside," Dr. Kennedy did not tie those phrases to specific events. Nor did Dr. Kennedy testify that she believed YH-J was telling the truth, or was even correct in her memories, or that the memories were accurate. As an expert, who provided a foundation for her expertise and observations, her testimony was within the allowable evidence permitted under Military Rule of Evidence [Mil. R. Evid.] 702.[5]

In his affidavit supplied to this court, trial defense counsel explains at length why he did not object to Dr. Kennedy's testimony. First, he knew the substance of her testimony as the defense had an expert consultant who was familiar with Dr. Kennedy's qualifications and the areas to which she would testify. Second, the defense's consultant agreed with Dr. Kennedy's testimony and that it was "soundly based" in her fields of expertise. In short, defense counsel did not object because there was no tactical reason for so doing. We find counsel's stated reasons for not objecting to Dr. Kennedy's testimony reasonable.

While the defense counsel's explanation of his decision not to object during Dr. Kennedy's testimony was reasonable, it is harder to understand the defense counsel's failure to object during closing argument when the government mischaracterized what Dr. Kennedy said. Specifically, government counsel argued ". . . and then Dr. Kennedy that talked extensively about the formation of memories and how that makes [YH-J] believable. That makes what happened to her believable." However, this failure to object, even if deficient, was not prejudicial as the military judge sua sponte stated that he would not consider Dr. Kennedy's testimony about YH-J's memories to mean that the memories were true.

### B. Failure to Introduce SSG B's Medical Records

At first blush it might appear that defense counsel's failure to introduce SSG B's medical records was deficient. A further review illustrates that it was a tactical decision that closed one avenue of attack, but enabled another. The defense could have introduced the medical records and argued that, if the assault happened, it occurred on 23 July 2007, or a month outside the charging window. The issue then

---

[5] In his affidavit, the trial defense counsel stated that after Dr. Kennedy testified he discussed the testimony with his expert consultant. The defense expert informed defense counsel that Dr. Kennedy's testimony was soundly based in science. The defense expert provided the defense with questions to cross-examine Dr. Kennedy as to the limits of her testimony.

would have been whether a month difference constituted a fatal variance to the charged specifications. If the military judge allowed four weeks to fall within the "between on or about" language the defense would lose its alibi defense.[6]

We therefore ask ourselves, was it reasonable for the defense to conclude the military judge would simply expand the charged time frame to encompass an additional four weeks? We answer in the affirmative.

The government charged appellant with grabbing the arm of YH-J and committing an indecent act on YH-J, between on or about 13 May 2007 and 23 June 2007. Though both events happened on a single night, the government chose to charge a window of time, in fact a non-exact window. As the military justice system is a notice pleading jurisdiction this charging decision is permissible. *See generally United States v. Fosler*, 70 M.J. 225,229 (C.A.A.F. 2011).

The words "on or about" in pleadings mean that "the government is not required to prove the exact date, if a date reasonably near is established." *United States v. Hunt*, 37 M.J. 344, 347 (C.M.A 1993) (internal citations omitted). What is "reasonably near" does not have a bright line rule. In *Hunt* "reasonably near" was several weeks. A reasonable defense counsel could conclude that the military judge would use his authority under R.C.M. 918(a)(1) to modify the charges and specifications under the authority to make "exceptions and substitutions" to conform the findings to the evidence.

On the one hand, if the military judge found a fatal variance, appellant could not be convicted on those charges.[7] On the other hand, if the military judge did not find the variance fatal the defense would lose its argument that appellant could not have committed the crime on 8 June 2007 because he was at BNCOC. Under the circumstances, the defense made a reasonable choice.

*C. The Failure to Introduce Evidence the Appellant's Attendance at BNCOC Made an Offense Date of 8 June 2007 Impossible*

At trial, the defense theory of the case was that YH-J's memories were wrong, and appellant did not have the opportunity to commit the offense. Defense introduced evidence, through several witnesses, that appellant worked all the time, was in the field frequently, and was generally not at home. Defense also introduced the fact that on June 8, 2007, appellant was at BNCOC. Appellant's wife testified

---

[6] Defense counsel affidavits lend support to the conclusion that this was a tactical decision, not an oversight.

[7] This does not mean that the prosecution could not prefer a new charge.

that when appellant was at BNCOC he stayed in the barracks. Other than appellant's wife, the defense did not introduce any evidence which would show that in 2007, at Fort Polk, attendance at BNCOC required a soldier to be away from home for the entire time.[8]

Given the defense theory of the case, it would appear to be ineffective to fail to introduce evidence that appellant was away at the time the offense was committed. We therefore invited defense to supplement their appellate brief and address this issue. In response, they have appended Appellate Defense Exhibits B, C, and D, to establish that: appellant attended BNCOC from 29 May 2007 to 15 June 2007; per Army regulations, BNCOC was intended to be a "live-in environment, where possible;" and the Army did not move to a web based core model until 2009.

After reviewing the submission, we find Defense Exhibits B, C, and D do not establish that appellant was physically away from his quarters during the relevant time period. Though introduction of these exhibits might have made parts of appellant's wife's testimony more credible, they are not dispositive. With no other evidence that shows that appellant was in fact away from his home during the time period, we cannot conclude that the defense counsel was deficient and that the result of the proceeding would have been different.

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge BURTON and Judge HAGLER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[8] In rebuttal, the government introduced evidence that BNCOC was not a residential course at Fort Polk during that time frame. While the government's witness was credible, his knowledge was not first-hand. Due to the almost ten years between the BNCOC class and the testimony, we do not find his testimony case-dispositive, although it does tend to undercut the weight of the Appellate Exhibits submitted by appellant to bolster this particular ineffectiveness claim.